UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | No. 14-CR-135 |
| | ) | |
| vs. | ) | Honorable Virginia Kendall |
| | ) | District Judge |
| JOHN BILLS | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHN BILLS' MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS IN LIMINE**

Now comes JOHN BILLS, by and through his undersigned attorney, and hereby moves this Honorable Court to bar any testimonial statements which the Plaintiff offers, pursuant to the rule established in *Crawford v. Washington*, 541 U.S. 36 (2004) and to bar any 404(b) evidence. In support thereof, Defendant Bills states as follows:

**Introduction**

A motion *in limine* is a request for the court to provide its guidance on an evidentiary issue prior to the beginning of trial. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999); *see Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) ("*in limine*' has been defined as '[on] or at the threshold; at the very beginning; preliminarily.' Black's Law Dictionary 708 (5th ed. 1979)). The court may provide the sought after guidance in the form of a preliminary ruling regarding admissibility. *Wilson*, 182 F.3d at 570.

Although such preliminary evidentiary rulings are not explicitly provided for in the *Federal Rules of Evidence*, trial judges are authorized "to rule on motions *in limine* pursuant to their authority to manage trials." *Luce*, 469 U.S. at 41 n.4. For the court to find that evidence is inadmissible based on a motion *in limine* the court must find the proposed evidence to be

inadmissible on all grounds. *Townsend v. Benya*, 287 F.Supp. 2d 868 (N.D. Ill. 2003). This standard is tempered, however, by the fact that "[j]udges have broad discretion when ruling on motions *in limine*." *Jenkins v. Chrysler Motor Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

**I.      Background**

Mr. Bills was charged with numerous counts of wire, mail, and honest services fraud as well as federal program bribery, relating to his alleged receipt of money, gifts, and favors in exchange for steering the Chicago red light camera program toward Redflex Traffic Systems, a vendor of the cameras. His co-defendants in this action are the CEO of Redflex, Karen Finley, and Martin O'Malley, a longtime friend of Mr. Bills who was employed by Redflex and was the alleged intermediary between Redflex executives and Mr. Bills.

According to the criminal complaint (the "Complaint") filed in this case, the United States Attorney for the Northern District of Illinois (the "Government") believes that Defendant Bills has violated 18 U.S.C. § 666(a)(1)(B). Doc. 2, p. 1. The Government alleges that Defendant Bills, as an agent for the City of Chicago, accepted and agreed to accept things of value in exchange for assisting in the award of contracts for Digital Automated Red Light Enforcement Programs ("DARLEP"s). *Id.* Attached to, and in support of, the single-page Complaint, is a twenty-nine page affidavit from FBI Special Agent Brian J. Etchell. *See* Doc. 2.

Agent Etchell spends the majority of his affidavit discussing one witness against Defendant Bills: Individual A. Individual A is Aaron Rosenberg who received immunity in this matter and has been cooperating with the Government for some time now. Based on the Complaint, Rosenberg seems to be a significant witness in the Government's case against Defendant Bills. Further, Rosenberg's along with statements made by (ex)-Redflex employees as disclosed to Defendant Bills through discovery are testimonial in nature. Bills is unsure

whether the Government intends to call Rosenberg or other (ex)-Redflex (including but not limited to Finley and O'Malley) employees as witnesses at the time of trial; however, Bills wants to ensure that the tenets of the Federal Rules of Evidence in light of *Crawford* and its progeny are strictly adhered to.

**II.     Argument**

        **a.  The Rule Announced in *Crawford v. Washington* Bars the Government from Introducing Testimonial Statements at Trial**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." In *Crawford v. Washington*, however the Supreme Court re-conceptualized the relationship between the Sixth Amendment right of confrontation and the evidentiary rules concerning the admissibility of hearsay. The decision, from which there was no dissent, repudiated the standard followed by the Court for the previous twenty-four years and overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), in achieving that result.

In *Crawford,* Justice Scalia, speaking for the Court, traced the history of the right to confront one's accusers from ancient Rome, with particular attention to early English common law. From that analysis, he gleaned "two inferences about the meaning of the Sixth Amendment." *Crawford*, 541 U.S. at 50. First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id*. From this it followed that the protection was not limited to in court testimony. It was equally clear, however, "that not all hearsay implicates the Sixth Amendment's core concerns." *Id*. at 51. Thus, for example, an "off-hand, overheard remark" might be deemed unreliable and excluded as inadmissible hearsay, but it would not come within the evils addressed by the Confrontation Clause. *Id*. at 51. At the

3

...

same time, a statement not excludable as hearsay might nonetheless be admissible for Sixth Amendment reasons.

The Confrontation Clause applies, the Court held, "to 'witnesses' against the accused – in other words, those who 'bear testimony.'" *Crawford*, 541 U.S. at 51. The court left "for another day any effort to spell out a comprehensive definition of "testimonial," but it did proffer illustrations. *Id*. at 68. The Court quoted with apparent approval references in briefs to such examples at "*ex parte* in-court testimony or its functional equivalent, formalized testimonial materials, such as affidavits, and depositions. *Id*. Particularly relevant to the present case, the Court said: "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id*. at 51 ("Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not sworn testimony, but the absence of oath was not dispositive,"). "Whatever else the term covers," the Court concluded, "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68.

The second inference Justice Scalia drew from the study of history was "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54. This, the Court said, was a necessary, not merely a sufficient, condition for the admissibility of testimonial statements. "[T]his requirement was dispositive, and not merely one of several ways to establish reliability." *Id*. at 55. It was here that the *Roberts* decision had been in error:

> The *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one.

*Crawford*, 541 U.S. at 62 ("Dispensing with confrontation because testimony was obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty,"). The Court made clear that its holding applied only to testimonial hearsay. "Where nontestimonial hearsay is at issue, it is wholly inconsistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Id*. at 68. Nor did the decision alter the principle that the defendant by his conduct could forfeit the right of confrontation.

The impact of *Crawford* has been profound and has generated a substantial amount of commentary. The *Roberts* decision has been repudiated in at least two respects: (1) if the proffered hearsay is a testimonial statement, the right of confrontation applies, even if it falls within a "firmly rooted" exception to the hearsay rule; (2) no longer is it sufficient that the testimonials statement bears "particularized guarantees of trustworthiness." But the *Crawford* Court explicitly declined to define testimonial statements, and this had led to frustration and confusion in the lower courts.

One category of statements explicitly included by the Court were those resulting from police interrogations, and this is understood to include responses of victims of and witnesses to crimes, as well as the *targets of investigations*. *See United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("[S]tatements of a confidential informant are testimonial…. Tips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial,").

The Supreme Court returned to the *Crawford* issue in *Davis v. Washington*, 547 U.S. 813 (2006), in which it concluded that not all responses to police interrogation would give rise to the right of confrontation. Specifically, the Court was concerned with statements made in the course of a 911 call and statements made at a crime scene. Two independent cases were joined in the

5

grant of certiorari: the *Davis* case, and *Hammon v. Indiana*. In *Davis*, the declarant had told a 911 operator that the accused was assaulting her. Eventually, she said that the accused had run out the door and the operator continued the conversation eliciting additional information about the accused. The recorded conversation was introduced at the trial of the accused, and he was convicted.

In the second case, officers had responded to a reported domestic disturbance. The purported victim and the alleged assailant were both in the house. The officers kept them separated and garnered an account of what had happed from the victim. They also had her fill out a battery affidavit in which she recounted acts of violence by the accused. She failed to appear at the trial, but the officer who questioned her was called to testify as to what she had said and to authenticate the affidavit. The accused was convicted of domestic battery and violating probation.

Justice Scalia, speaking for the Court, explained the distinction to be drawn as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicated that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. So viewed, the 911 call in *Davis* was the product of an emergency situation, at least at the outset. Once, however, the immediate danger had passed and the accused had departed, the responses to the further questions by the operator "were testimonial, not unlike the 'structured police questioning' that occurred in *Crawford*. *Davis*, 547 U.S. at 828; *see also United States v. Thomas*, 453 F.3d 838 (7th Cir. 2006).

As to the questioning at the scene in *Hammon*, the Court was faced with "a much easier task, because here the circumstances were not materially distinguishable from those present in

6

*Crawford*. "[T]he interrogation was part of an investigation into the possibly criminal past conduct – as, indeed, the testifying officer expressly acknowledged." *Davis*, 547 U.S. at 829.

The distinction between testimonial and non-testimonial statements within the meaning of *Crawford* and *Davis* again reached the Supreme Court in *Michigan v. Bryant*, 562 U.S. 344 (2011). In that case, police had been told by a mortally wounded victim that he had been shot by the defendant and thereafter he, the victim, had driven himself to a service station parking lot. The conversation with the police continued for five to ten minutes until emergency medical personnel arrived. The victim died shortly thereafter. The defendant was found guilty of second degree murder, but the Supreme Court of Michigan reversed the conviction, concluding that the statement of the victim was testimonial, because its primary purpose was to establish the facts of a prior event, not to meet an ongoing emergency. It distinguished *Davis*, finding the facts more analogous to *Hammond*.

The Supreme Court reversed and remanded, holding that the victim's statements did not violate the confrontation clause. Speaking for the Court, Justice Sotomayor explained that "the existence of an 'ongoing emergency' at the time of an encounter between an individual and the police is among the most important circumstances informing the 'primary purpose' of an interrogation." *Bryant*, 562 U.S. at 361. She continued "that whether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id*. The state court had viewed the question too narrowly on the immediate danger to victims presented in *Davis* and *Hammond*, both of which were domestic violence cases. *Id*. at 363. "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id*.

7

The Court acknowledged that, quoting *Davis*, "a conversation which begins as an interrogation to determine the need for emergency assistance can evolve into testimonial statements." *Bryant*, 562 U.S at 365. "Trial courts can determine in the first instance when any transition from nontestimonial to testimonial occurs." *Id*. In the instant case, however, this Court should not need to make any such determination. The statements which the Government may seek to admit without calling witnesses, are all testimonial in nature, and should be barred.

### b. The Primary Purpose of Roesenberg's and (ex)-Redflex Statements Were To Establish the Facts of a Prior Event, Not to Meet an Ongoing Emergency

As explained in the various cases above, courts seem to agree that when a statement is made pursuant to an ongoing emergency, it is not testimonial in nature and likely can be admitted barring other evidentiary concerns. In this case, however, there can be no arguments that the statements of Roesenberg or other (ex)-Redflex employees were given to meet an ongoing emergency. Rather, they were used expressly to support the Complaint and or agents investigation in this matter. As such, they are all testimonial in nature.

Rosenberg and the (ex)-Redflex employees' statements are testimonial and cannot be admitted without cross-examination unless there is a non-hearsay purpose. The most common non-hearsay purpose is context – in which the statements are not offered to prove the truth of the contents but to provide context to other evidence. This should not be an available non-hearsay purpose in this case.

As an example of the evidence to be barred herein, Rosenberg's statements are the bedrock upon which Agent Etchell builds the Complaint. The statements do not provide any context for other witnesses' statements, nor can the Government assert that there is any purpose to Rosenberg's statements other than to admit them for their truth. Unless the Government produces Rosenberg on the witness stand at trial and makes him available for cross examination,

any such statements of Rosenberg should be barred in this case. The same would apply to all of the (ex)-Redflex employees who have provided information of alleged out of court statements and evidence to the Government during this investigation.

In light of the above-listed rules, cases, and facts, this Court should bar any unconfronted statements because they are clearly testimonial in nature and should not be used by the Government in the trial of this matter.

### III. Government Should Be Barred From Introducing Certain Evidence

In criminal proceedings, the accused shall enjoy the right to an impartial jury. U.S. Const. Amend. VI. Fairness, as defined by the constitution, demands that the defendant have a panel of unprejudiced jurors. *Murphy v. Florida*, 421 U.S. 794, 799 (1977). The Federal Rules of Evidence are to "be constructed to secure fairness . . . of the law of evidence . . . [so] that the truth may be ascertained and proceedings justly determined. Fed.R.Evi. 102.

*Federal Rule of Evidence 401* dictates that only relevant evidence is admissible at trial. Relevant evidence is evidence that is needed to avoid a chronological or conceptual void in the story. *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997) *quoting Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1994). . Furthermore, this Circuit has defined relevancy as "a relationship between a proffered item of evidence and a 'fact that is of consequence to the determination of the action.'" *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (quoting Weinstein's Evidence, para. 401[03], pp. 401-17).

*Federal Rule 403* prohibits the introduction of evidence that is unfairly prejudicial to be introduced during trial. *Fed.R.Evi 403*. Although all evidence is somewhat prejudicial, the rule only prohibits evidence that is unfairly prejudicial. *See United States v. Adames*, 56 F.3d 737

9

(7th Cir. 1995). Unfair prejudice is shown when the decision to convict is based on emotional, rather than rational decisions by the jury. *Id.*

> *Rule 404(b)* states:
>
> prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way, but permits the use of
> this evidence for other purposes:
>
> **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove aperson's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses;** ... This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*FED.R.EVID. 404(b).*

On August 18, 2014, the 7th Circuit Court of Appeal "abandoned" the four part test used to evaluate the admissibility of 404 b evidence in favor of a "more straightforward rules based approach." *United States v. Gomez*, 2014 WL 405893 (7th Cir. 2014). The Court in *Gomez* further stated:

> All evidentiary questions begin with Rule 402, which contains the general principle that"[r]elevant evidence is admissible" and"[i]rrelevant evidence is not." Rule 401 defines relevant evidence as that which is both *probative* (having "any tendency to make a fact more or less probable than it would be without the evidence") and *material* (the fact must be "of consequence in determining the action").

*Id.* at 12.

> A prior act will be relevant to this purpose when it " 'bears a singular strong resemblance to the pattern of the offense charged' with the similarities between the two crimes 'sufficiently idiosyncratic to permit an inference of pattern.' " *Id.* at 498 (quoting *United States v.Thomas,* 321 F.3d 627, 634–35 (7th Cir.2003)). Sometimes the prior bad act may be too dissimilar to be relevant to show a distinctive pattern, leaving only the forbidden propensity inference. *Id.*

*Id*. at 13.

> In sum, to overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See FED.R.EVID. 401, 402, 404(b)*. Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence *under Rule 403* if the risk is too great. The court's *Rule 403* balancing should take account of the extent to which the nonpropensity fact for which the evidence is offered actually is at issue in the case.

*Id*. at 17

Based upon *Rule 401 to 404(b)*, all of the anticipated evidence not involving the current charges is irrelevant to the case at issue; therefore, said facts have no probative value. Those facts are also inflammatory in nature and the use of any of that information would subject Defendant Bills to the danger of unfair prejudice in violation of *Federal Rule of Evidence 403*.

                                            Respectfully submitted this
                                            1st day of December, 2015.


                              By:     /s/ Nishay K. Sanan
                                          Nishay K. Sanan, Esq.

                                            Attorney for Defendant
                                            JOHN BILLS

***PLEASE TAKE NOTICE*** that on December 1, 2015, WE CAUSED TO BE FILED WITH THE CLERK OF THE COURT, DEFENDANT'S Motions In Limie, A COPY OF WHICH IS SERVED UPON YOU.

/S/ NISHAY SANAN_____
Nishay K. Sanan, Esq.
53 W. Jackson Blvd
Suite 1437
Chicago, IL 60604
312-692-0360

### CERTIFICATE OF SERVICE

    The undersigned, an attorney, first being duly sworn on oath, states that a copy of Motion was served upon the parties named by electronically filing the same pursuant to the local rules of ECM on December 1, 2015.

__/s/ Nishay Sanan_____