UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 14 CR 135 |
| v. | ) | |
| | ) | Honorable Virginia Kendall |
| JOHN BILLS | ) | |

## GOVERNMENT'S MOTION TO ADMIT CONSENSUALLY-RECORDED CONVERSATION

The United States of America, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the instant motion to admit a consensually-recorded conversation and states as follows:

*Background*

The indictment charges John Bills, along with others, beginning in approximately 2002 and continuing until at least late 2012, with intending to devise and actually devising and participating in a scheme to defraud the City of Chicago of money, property, and the right to honest services of Bills, a City of Chicago employee from 1979 until 2011. The indictment further charges Bills with conspiracy to engage in federal program bribery by corruptly soliciting, demanding and accepting cash payments and other personal financial benefits, intending that Bills would be influenced and rewarded in connection with his actions taken, and actions to be taken, with respect Chicago's Digital Automated Red Light Enforcement Program, known as DARLEP.

1

Specifically, Bills, who managed the City's DARLEP program first in the Department of Transportation and then in the Office of Emergency Management Control, steered multiple and lucrative contracts for services related to Chicago's DARLEP program to Redflex Traffics Systems Inc., a company which developed and manufactured digital photo enforcement systems, including red light cameras. In exchange for Bills' efforts to assist in obtaining, keeping, and expanding the DARLEP contracts with the City,[1] representatives of Redflex provided Bills with personal financial benefits, including flights, hotels, meals, cash funneled through co-defendant Martin O'Malley, and, relevant here, rental cars. Aaron Rosenberg, Redflex's Vice President of Sales and Marketing who had consistent contact with Bills, often arranged for rental cars for Bills when he traveled on vacation, usually to Phoenix, Arizona. Redflex further arranged for O'Malley to be hired by Redflex, at the request of Bills and in order to please Bills, and to receive lucrative compensation, much of which defendant O'Malley in turn funneled to Bills. Per O'Malley's contract, commissions were tied directly to the number of new red light cameras purchased and installed by the City, approximately $1500 per camera. According to O'Malley, Bills advised him that Bills would retain the lion's share of the bonuses and commissions, but Bills nevertheless promised to take care of O'Malley.

---

1 One such contract that Bills assisted Redflex in obtaining was a "sole source" contract for the maintenance of existing cameras. Sole source meant that the contract approval process would not proceed through a competitive procurement process such as a request-for-proposal, but instead would go directly to Redflex.

In or around early 2007, Rosenberg, acting on his own (and well before any government investigation of these matters), recorded a telephone conversation with Bills.[2] At the outset of the call, Bills advised Rosenberg that he had a "sole source review" meeting coming up. Rosenberg responded, asking how Redflex was looking, and Bills responded fine. Rosenberg then advised Bills that he had a rental car set up for Bills when he arrived the next day; Rosenberg explained that he would rent the car, put in a parking spot, and then call Bills and tell him where he parked it. Bills and Rosenberg then discussed how many Redflex systems or cameras they expected to be installed that year in Chicago, and Bills predicted 120.

*Analysis*

It is well-settled that the Fourth Amendment's exclusionary rule does not apply to non-governmental searches and seizures. If evidence falls into the government's hands following a private search and seizure, no constitutional violation arises. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) ("The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action."). Undisputed testimony, the government anticipates, will establish that the consensually-recorded conversation between Rosenberg and Bills was not made by the government, and therefore, the Fourth Amendment does not apply because no governmental action was involved. The fact that the recording made by a private party without

---

[2] This recording was not made at the direction of the FBI or any other federal law enforcement agency.

governmental knowledge or consent was later acquired by the government does not make the recording excludable under the Fourth Amendment.

While the Fourth Amendment is not implicated by the recording of a telephone conversation between two private parties where there is no governmental action, such conduct does invoke federal statutory schemes, specifically Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Section 2511(1)(a) prohibits the intentional interception of any oral communication where the parties have a reasonable expectation of privacy. 18 U.S.C. § 2511(1)(a). Section 2511(d)(2) provides for an exception:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d). In other words, this section authorizes a private party to intercept an oral communication upon the consent of any of the participants, including the interceptor, but adds an exception which forbids private party interceptions when "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the ... laws ... or for the purpose of committing any other injurious act." Thus, the question is whether Rosenberg recorded the conversation with the purpose of committing a crime or tort. The defendant bears the burden to prove Rosenberg did so by a preponderance of the

evidence. *United States v. Zarnes*, 33 F 3d 1454, 1469 (7th Cir. 1994) (providing that the defendant "had the burden of proving an unlawful purpose by a preponderance of the evidence") (citations omitted).

The government anticipates that Rosenberg will testify that he made the recording of Bills because he wanted an "insurance policy" that would accurately reflect the nature of the bribery scheme, in case it ever became necessary to demonstrate that to another party, such as the government. Courts have approved the use of recorded conversations between two private parties based on very similar explanations. *See e.g., Zarnes*, 33 F.3d at 1469 (finding that the district court did not clearly err when it found that the intercepting party "made the tape for the lawful purpose of turning it over to the Government if she were caught in the hope of obtaining a better deal for herself") (internal quotation marks and alteration omitted); *Glinski v. City of Chicago*, No. 99 C 3063, 2002 WL 113884, at *2 (N.D. Ill. Jan. 29, 2002) (providing that intercepting party's "purpose in creating the recording was to gather evidence to bolster his legal case against the defendants. That is not a criminal or tortious purpose."); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 626 (7th Cir. 2000) ("[A] purpose of gathering evidence of a violation of law [in a criminal prosecution] is not criminal or tortious."); *id.* (providing that the intercepting party "was going to give them to the FBI for use in evidence, a clearly lawful purpose. . . ."); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 959 (7th Cir. 1982) ("A desire to make an accurate record of a conversation to which you are a

party is a lawful purpose under the statute even if you want to use the recording in evidence.").

Furthermore, the fact that the surreptitious recording may have violated state law does not change the intercepting party's intended purpose for recording the conversation. "When the law speaks of recording conversations with a criminal or tortious purpose, it has, we think, regard for the intended use of the recordings." *In re High Fructose Corn Syrup*, 216 F.3d at 626. *See also Sussman v. Am. Broadcasting Cos.*, 186 F.3d 1200 (9th Cir. 1999) (providing that "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception-its intended use-was criminal or tortious"). As such, whether or not Rosenberg's actions violated state law does not change his intended purpose, and, in fact, the government anticipates Rosenberg will testify that he did not even know that recording a private conversation between two parties violated state law.[3]

---

3 At the time of the recording, Rosenberg was likely in California, which is a two-party consent state. As such, Rosenberg's recording of the telephone conversation with Bills likely violated California state law.

*Conclusion*

Based on the foregoing, the government respectfully requests that the Court GRANT the instant motion to admit the described consensually-recorded conversation.

                                        Respectfully submitted,

                                        ZACHARY T. FARDON
                                        United States Attorney

                          By:    /s/Zachary T. Fardon
                                        ZACHARY T. FARDON
                                        LAURIE BARSELLA
                                        TIMOTHY J. STORINO
                                        Assistant United States Attorneys
                                        219 S. Dearborn Street, Suite 500
                                        Chicago, Illinois 60604
                                        (312) 353-5300

Dated: December 1, 2015