UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 14 CR 135 |
| v. | ) | |
| | ) | Honorable Virginia Kendall |
| JOHN BILLS | ) | |

## GOVERNMENT'S MOTION TO PRECLUDE ANY EVIDENCE OF SPECIFIC ALLEGATIONS STEMMING FROM FEILER LETTER

The UNITED STATES OF AMERICA, through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the instant motion to preclude any mention of unsupported specific allegations against defendants Karen Finley and Martin O'Malley, who the government anticipates calling as witnesses at trial, stemming from a letter drafted by a former Redflex employee.

*BACKGROUND*

On or about August 13, 2014, a federal grand jury returned an indictment charging defendant John Bills, along with co-defendants Karen Finley and Martin O'Malley as to certain counts, with (1) honest services fraud, in violation of Title 18, United States Code, Section 1341 and 1346 (Counts One through Twelve); (2) extortion under color of official right, in violation of Title 18, United States Code, Section 1951 (Count Thirteen); (3) conspiracy to commit federal program bribery, in violation Title 18, United States Code, Section 371; (4) federal program bribery, in violation of Title 18, United States Code, Section 666(a)(1)(B) (Counts Fifteen

1

through Seventeen); and (5) tax fraud, in violation of Title 18, United States Code, Section 7206(1) (Counts Twenty-one through Twenty-Three).

More specifically, Bills, Finley, O'Malley and others, beginning in approximately 2002 and continuing until at least late 2012, devised, intended to devise and participated in a scheme to defraud the City of Chicago of money, property, and the right to honest services of Bills, a City of Chicago employee from 1979 until his retirement in June 2011. At times relevant here, Bills worked in various roles at the Chicago Department of Transportation and the Office of Emergency Management Communications. In those roles, Bills managed the City of Chicago Digital Automated Red Light Enforcement Program, known as DARLEP. From 2001 through 2005, Finley worked as the Vice President of Operations at Reflex, and then in 2005, became Chief Executive Officer of Redflex, where she stayed until 2013. Redflex developed and manufactured photo enforcement systems including red light cameras, and sought and obtained the DARLEP contracts with the City of Chicago.

As part of the scheme to defraud, Finley and Aaron Rosenberg, Redflex's Vice President of Sales and Marketing, provided Bills with personal financial benefits, including flights, hotels, meals, and rental cars. Redflex, through Rosenberg and Finley, further arranged for defendant Martin O'Malley to be hired by Redflex, at the request of Bills and in order to please Bills, and ensure his continued support of Redflex in keeping and growing Redflex's contracts with the City. They also arranged for O'Malley to receive lucrative compensation, much of which O'Malley in

turn funneled to Bills. The indictment further charges Bills, Finley and O'Malley with conspiracy to engage in federal program bribery by Bills corruptly soliciting, demanding and accepting cash payments and other personal financial benefits, intending that Bills would be influenced and rewarded in connection with Chicago's DARLEP contract.

On or about August 24, 2010, during the scheme to defraud and conspiracy, a Redflex employee who was under investigation for certain expense improprieties sent a letter to Max Findlay, Chairman of Redflex Holdings, and the Board of Directors of Redflex Holdings. *See* (Exh. A) (hereinafter, "Feiler letter").[1] In the letter, Redflex employee Robert Feiler, then Vice President of Field Services, alleged the existence of improprieties between Redflex and Bills by way of O'Malley. According to the Feiler letter, O'Malley had an unusual contract with Redflex, which provided for a commission "for every new build" in Chicago, and O'Malley was tied to Bills, who ran the DARLEP program for the City and "where the money trail will lead to ultimately." (Exh. A, at 1). Feiler also alleged that Bills enjoyed "lavish vacations in Arizona and California directly on the expense report of Aaron Rosenberg." (Exh. A, at 2). Feiler explained how O'Malley's commissions were not directly addressed by Redflex's executives and "the end receiver [of the commissions] [was] a non employee and high level municipal employee at the City of Chicago," i.e., Bills. (Exh. A, at 2).

In addition to the above allegations made by Feiler, which track many of the allegations in the Indictment, Feiler made personal allegations against Finley and

---

[1] The government will file a copy of the letter under seal.

O'Malley. First, as to Finley, Feiler alleged that, in her role as CEO, she was unprofessional in a number of ways. (Exh. A, at 2-3). Second, as to O'Malley, Feiler alleged that O'Malley acted as "[Redflex's] introduction to the lobbyist in Jefferson Parrish [Louisiana] who helped turn the votes [Redflex's] way." (Exh. A, at 2).

The government will elicit the existence of the Feiler letter on direct examination of Finley and/or Rosenberg. In particular, the government plans to ask about the existence of the Feiler letter and its general allegations as they relate to O'Malley and Bills in order to provide context and explain why Redflex took particular steps after the Feiler letter became public in 2012. Specifically, in response to the Feiler letter, Redflex hired a private law firm to conduct an investigation into the allegations raised in the Feiler letter.[2] *See United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (holding certain statements were not hearsay "as it was offered for the effect it had on the listener"); *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998); *United States v. Peco*, 784 F.2d 798 (7th Cir. 1986) ("Certain statements, which evidence the effect of the statements on the mind of the listener . . . are not hearsay."). The personal allegations against Finley and O'Malley contained in the Feiler letter, however, are irrelevant to the disposition of the matter at hand, and should be excluded.

---

[2] The government will not seek to have the Feiler letter admitted into evidence.

4

*ANALYSIS*

As with the admissibility of all evidence, the place to begin is Rule 401. Federal Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable that it would be without the evidence, and the fact is of consequence in determining the action. Fed.R.Evid. 401. The test, therefore, of whether evidence of these allegations in the Feiler letter are in any respect admissible or may be used in cross-examination of witnesses is whether the evidence is "relevant." Even if relevant, nonetheless, the evidence may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed.R.Evid. 403.

In addition, because the government intends to call Finley and O'Malley as witnesses at trial, Federal Rule of Evidence 608(b) also comes into play. That Rule provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness . . . ." Fed.R.Evid. 608(a). Where a witness has not been convicted of a crime, moreover, extrinsic evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness," is inadmissible. Fed.R.Evid. 608(a). The Court however may permit cross-examination regarding specific instances of such conduct if probative of a witness's character for truthfulness. *Id.*

A.  Personal Allegations against Finley

The personal and unsupported allegations made in the Feiler letter against Finley are not relevant and, even if they were, any marginal relevance stemming from these allegations are substantially outweighed by the unfair prejudice they cause. None of these allegations pertain to Finley's truthfulness.

The allegations made in the Feiler letter, which are vague and unsupported, do not make any fact of consequence in determining the action more or less likely. The charges here concern a scheme to defraud the City of Chicago of the honest services of Bills, and, part and parcel to that, a conspiracy between Bills, Finley, and O'Malley to bribe Bills in exchange for his assistance in assisting Redflex to obtain the DARLEP contracts with the City of Chicago. The sensational allegations in the Feiler letter – alleging an unprofessional workplace at Redflex – are simply that: sensational allegations. They have nothing to do with the allegations with which Bills stands accused, or to which Finley has entered a plea of guilty.

Likewise, these allegations do not relate to Finley's truthfulness. Finley is expected to take the stand at trial, and by doing so, she will place her credibility before the jury. However, taking the witness stand does not give the defense a green light to rummage through a witness's life story and ask him or her about any unsupported allegation that has been lodged against him or her. To do so would surely turn a trial into a massive fishing expedition regarding each witness, especially in the age of the internet. Rule 608 guards against this possibility by limiting cross-examination to truthfulness. As these personal and sensational

allegations do not relate to truthfulness, they are not appropriate for inquiry on cross-examination.

Furthermore, under Rule 403, any mention of personal allegations against Finley would have the effect of confusing issues. As noted above, the allegations are not relevant, and at best, any inquiry into these allegations would simply seek to smear the witness. Cross-examination of Finley of unproven allegations would inject extraneous issues into the case and divert the jury's attention away from the facts relevant to the disposition of the case.

B.    Louisiana Allegations against O'Malley

The Feiler letter also alleged that O'Malley acted as "[Redflex's] introduction to the lobbyist in Jefferson Parrish [Louisiana] who helped turn the votes [Redflex's] way." (Exh. A, at 2). In the next sentence, Feiler describes this allegation as "seedy" and then expresses surprise that the FBI did not connect these allegations during an investigation of another person in Louisiana. (Exh. A, at 2). Similar to the personal allegations made against Finley, the Feiler letter's allegation against O'Malley with respect to dealings in Louisiana is equally irrelevant and will simply mislead and confuse the jury.

At best, the Feiler letter asserts that O'Malley introduced Redflex to a person in Jefferson Parrish, Louisiana, who may have assisted Redflex in obtaining a contract there. Assuming its truth, this allegation makes no fact of consequence here more or less probable. As far as the government is aware, no charges have

7

arisen from any investigation into Redflex in Louisiana, and O'Malley has not been accused of any criminal wrongdoing there.

Moreover, the vague nature of the allegation makes it prime for misleading and confusing the jury under Rule 403. By introducing Redflex's dealings in another state through cross-examination of O'Malley or any other witness but without providing the full context of what happened there, the jury will be left to wonder and speculate. Questions surrounding allegations in Louisiana work only to divert the jury's attention from the allegations at hand – Bills' participation in a scheme to defraud the City of Chicago of his honest services and in a conspiracy to commit bribery.

WHEREFORE, the government respectfully requests that the Court grant the government's motion to preclude any mention of unsupported allegations against defendants Karen Finley and Martin O'Malley, who the government anticipates calling as witnesses at trial, stemming from the Feiler letter.

        Respectfully submitted,

        ZACHARY T. FARDON
        United States Attorney

By:  /s/ *Zachary T. Fardon*
      ZACHARY T. FARDON
      LAURIE BARSELLA
      TIMOTHY J. STORINO
      Assistant United States Attorneys
      219 South Dearborn Street, Suite 500
      Chicago, Illinois 60604
      (312) 353-5300

Date: December 1, 2015