UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 14 CR 135 |
| v. | ) | |
| | ) | Honorable Virginia Kendall |
| JOHN BILLS. | ) | |

**JOHN BILLS' MEMORANDUM IN
OPPOSITION TO GOVERNMENT'S MOTION TO CONDITIONALLY
ADMIT EVIDENCE PURSUANT TO FED. R. EVID. 801(d)(2)(E)**

**I.     Background**

Mr. Bills was charged with numerous counts of wire, mail, and honest services fraud as well as federal program bribery, relating to his alleged receipt of money, gifts, and favors in exchange for steering the Chicago red light camera program toward Redflex Traffic Systems ("Redflex"), a vendor of the cameras. His codefendants in this action are the CEO of Redflex, Karen Finley, and Martin O'Malley, a longtime friend of Mr. Bills who was employed by Redflex and was the alleged intermediary between Redflex executives and Mr. Bills. The Government has submitted its "Motion to Conditionally Admit Evidence Pursuant to Fed. R. Evid. 801(d)(2)(E) ("Santiago Proffer").

The Government's Santiago Proffer presentation follows its normal pattern by providing an overview of the charged conspiracy, a rehearsal of the governing law, and a capsule summary of its proposed evidence. After its detailed discussion of its case and the law the Government believes supports its position, the Government details the evidence which it intends to offer into evidence at trial, which the Government has separated into the following categories:

- Conversations, as recounted by Rosenberg and Finley…

- Conversations, as recounted [by] Rosenberg, O'Malley and Johnson…

- Conversations and emails, as recounted by Rosenberg, O'Malley and Finley…

- Conversations and emails, as recounted by Rosenberg, O'Malley and Finley…

- Conversations and emails, as recounted by Rosenberg, Finley and O'Malley…

- Emails, as recounted by Rosenberg and Finley…

- Conversations and emails, as recounted by Rosenberg, Finely, and other Redflex employees…

- Emails, as recounted by Rosenberg and Finley…

Proffer, p. 55. The Government notes that the above categories "are not intended to be exhaustive… rather the government proffers a representative sample…." *Id*. The sample provided; however, is entirely devoid of any statements by Defendant Bills.

## II. Argument

"For a co-conspirators' statements to be admissible under FRE 801(d)(2)(E), the government must establish by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statements were made in furtherance of the conspiracy. *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015), *citing United States v. Villasenor*, 664 F.3d 673, 681-82 (7th Cir. 2011). Courts have recognized that the coconspirator exception to the prohibition against hearsay evidence is a "narrow" one, *Krulewitch v. United States*, 336 U.S. 440, 4444 (1949), "odd and artificial… as an original matter," and a "fiction." *United States v. Pallais*, 921 F.2d 684, 687-88 (7th Cir. 1990) (recognizing "the curious reasoning by which coconspirator statements are admissible"). The government has the burden of proving all the necessary elements to admit hearsay statements by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999).

      **a. The Government Fails to Establish by a Preponderance of the Evidence the Existence of a Conspiracy**

To properly admit coconspirator hearsay statements, the Government must establish the existence of a conspiracy; the government must prove the existence of an agreement between two or more persons for the purpose of committing a criminal act. *See United States v. Hunt*, 272 F.3d 488, 495 (7th Cir. 2001). The Government "must present substantial evidence that a conspiracy existed and that the defendant agreed to join it." *See United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997) (internal quotation marks omitted), and this substantive evidence must prove by a preponderance of the evidence the existence of a joint venture between coconspirators. *See United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983) (existence of joint venture necessary for admission of hearsay). It is still a prerequisite to finding the existence of a conspiracy that there was an agreement between two coconspirators to enter into a joint venture, i.e., three was a "combination between [the participants]." *Id*. The Government's proffered evidence; however, is devoid of any mention of Bills entering into an agreement or joint venture.

      **b. The Government Fails to Establish by a Preponderance of the Evidence that Bills was a Member of Any Conspiracy**

Although the Government has offered a lengthy explanation of what it believes demonstrates Bills' membership in a conspiracy (and Bills submits the Government has failed), the Government must still establish that the defendant and the alleged declarants were members of the same conspiracy in order to admit the alleged coconspirator hearsay. *See Bourjaily*, 483 U.S. at 175. "A defendant's mere knowledge of, approval of, association with, or presence at a conspiracy is insufficient to establish the participation element." *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir. 1990); *see also United States v. Van Daal Wyk*, 840 F.2d 494, 498 (7th Cir. 1988). A member of a conspiracy cannot make the defendant a member simply by asserting

3

the defendant's participation – the defendant's membership in the conspiracy, if any, must be based on the evidence limited to him. *See United States v. de Ortiz*, 883 F.2d 515, 520 (7th Cir. 1989), *aff'd en banc*, 907 F.2d 629 (1990). The government must show that the defendant knew of the conspiracy and intended to join its criminal purpose – there must be a "participatory link" between the defendant and the conspiracy. *See United States v. Pagan*, 196 F.3d 884, 889 (7th Cir. 1999). The Government is obligated to demonstrate the participatory link in its proffer, prior to the introduction of coconspirator statements into evidence.

The determination whether a defendant joined a conspiracy "is individual; each defendant is entitled to separate consideration of his alleged participation." *United States v. Marrow*, 971 F. Supp. 1254, 1257 (N.D. Ill. 1997). To establish Bills' membership in a conspiracy, the Government must produce evidence independent from the statements of the alleged co-conspirators. *United States v. Petty*, 132 F.3d 373, 380 (7th Cir. 1997).

Rather than demonstrating that Bills took part in any conspiracy, a brief read of the Government's proffered evidence demonstrates that the only conspiracy in this matter is solely among employees of Redflex. It seems as though Mr. Bills had no involvement whatsoever in Redflex's attempts at securing a contract with the City of Chicago. Bills certainly did no more than have knowledge of, or even approval of Redflex's methods, if anything. As discussed above, a defendant's mere knowledge of, or approval of a conspiracy is "insufficient to establish the participation element." *Durrive*, *supra*. The Government has failed to establish any matter with particularity in which Bills is actually an active participant – rather, the Government has demonstrated the pervasive conspiracy within the ranks of Redflex. Such a showing simply is not enough for the Government to satisfy its burden.

### c. The Proffered Evidence Fails to Identify by a Preponderance of the Evidence Particular Statements in Furtherance of Bills' Alleged Conspiracy

For a coconspirator's statement to be admissible, that statement must have been made "during the course and in furtherance of the conspiracy." *Bourjaily*, 483 U.S. at 175; Fed. R. Evid. 801(d)(2)(E). The "in furtherance" requirement "is a limitation on the admissibility of coconspirators' statements that is meant to be taken seriously." *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989). The statement of a coconspirator satisfies the "in furtherance" requirement "when the statement is 'part of the information flow between conspirators intended to help each perform his role." *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989. The *Doerr* court expounded as follows:

> We further explained that statements "in furtherance" of a conspiracy can take many forms, including statements made to recruit potential coconspirators, statements seeking to control damage to an ongoing conspiracy, statements made to keep coconspirators advised as to the progress of the conspiracy, and statements made in an attempt to conceal the criminal objectives of the conspiracy.

*Id.* at 951. Applicable here, the *Doerr* court explained what statements may be narrative:

> Narrative declarations, mere "idle chatter," and superfluous casual conversations, however, are not statements "in furtherance" of a conspiracy. *See id*.; *see also United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983) (mere narrative declarations made without intent to induce assistance to the conspiracy, do not satisfy the "strict requirements" of Rule 801), *cert denied*, 465 U.S. 1103…(1984); *United States v. Lieberman*, 637 F.2d 95, 102 (2d Cir. 1980) (challenged testimony "smack[ed] of nothing more than casual conversation about past events. It is difficult to envision how it would have furthered the conspiracy.")

*Id.* In this case, the categories of statements offered by the Government are mere retelling of conversations and emails, by Redflex employees. These recounted conversations by Rosenberg, Finley, and O'Malley, are not made in furtherance of any conspiracy involving Bills. Rather, they are at best made in furtherance of Redflex's own agenda, and at worst "idle chatter" and "superfluous casual conversation." Such recounting of prior conversations are not "part of the

5

information flow between conspirators intended to help each perform his role." Thus, the Government has failed to demonstrate that the proffered statements are in furtherance of a conspiracy involving Bills.

### d. Former Redflex Employee Higgins is Involved in Many Statements, Yet is Unavailable for Cross-Examination as to Those Statements

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." The Court in *Crawsford v. Washington*, held that the Confrontation Clause applies to "witnesses against the accused – in other words, those who bear testimony." 541 U.S. 36, 51 (2004) (internal citations omitted). In this matter, the Government has provided ample statements from Bruce Higgins, who was Rosenberg's superior and Chief Executive Officer of Redflex from 2001 to 2005. It is significant that Higgins was involved at the time the alleged conspiracy took shape.

In discussing the alleged evidence of a conspiracy and those statements which may be used against Bills, the Government details numerous conversations which involve Higgins. These conversations include the following:

- Rosenberg advised Higgins of a request to pay for a hotel room and Higgins approved the request;

- On February 6, 2003 Rosenberg sent an email to Higgins and Finley, entitled "Chicago Update: Very Important;

- In an email from Rosenberg to Higgins dated May 18, 2003, they discussed a long conversation with Bills;

- Rosenberg and Higgins discussed the need to schedule a trip to Chicago to assist Bills;

- In May 19, 2003 email, Higgins agreed to a plan and mentioned Bills;

6

- In an email dated May 23, 2003, Rosenberg advised Higgins and Finley that he had been working with Bills;

- On Sunday May 25, 2003 Rosenberg sent another email to Higgins and Finley, stressing the importance of Web Ops;

- In June 2003, Bills allegedly made inculpatory statements at a dinner with Redflex employees, including Higgins;

- Higgins instructed alleged payments to Bills to be funneled through the customer service representative;

- In an email dated September 12, 2003, Higgins advised Rosenberg and Finley about Redflex's financial situation, and made further statements related to Bills;

- In October 2003, Bills allegedly forwarded emails from Dolinsky to Higgins;

- In July 2013, Higgins called O'Malley to discuss an interview with Redflex;

- On July 24, 2003, Higgins interviewed O'Malley along with Finley;

- Finley understood from Higgins that O'Malley was a friend of Bills;

- On August 5, 2003, Finley sent an email to Higgins with O'Malley's services agreement;

- Parts of the August 5, 2003 services agreement required Higgins' input, specifically the amount of commission;

- On October 17, 2003, Finley forwarded a prior email to Higgins again requesting his input as to commission amounts;

Santiago Proffer, pp. 14, 16, 17, 18, 19, 20, 21, 22, 23. The above statements specifically involve Higgins. If Higgins is in fact unavailable to testify, he will not be subject to cross-examination, and he has not been subject to prior cross-examination. His statements are testimonial in nature and cannot be admitted without cross-examination. The statements involving Higgins are inherently untrustworthy, and should not be allowed in this case.

**III. Conclusion**

In light of the above-listed rules and facts, this Court should deny the Government's Motion to admit "co-conspirator" statements.

Respectfully submitted this 8th day of December, 2015.

By: \_\_\_\_/s/ Nishay K. Sanan\_\_\_\_
Nishay K. Sanan, Esq.

Attorney for Defendant
JOHN BILLS

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, first being duly sworn on oath, states that a copy of Respons was served upon the parties named by electronically filing the same pursuant to the local rules of ECM on December 8, 2015.

\_\_/s/ Nishay Sanan_____

8