UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 14 CR 135 |
| v. | ) | |
| | ) | Honorable Virginia Kendall |
| JOHN BILLS | ) | |

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSES TO GOVERNMENT'S MOTIONS IN LIMINE

The UNITED STATES OF AMERICA, through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully files the instant reply to defendant's responses to government's motions in limine, and states as follows:

    A.    *Motion Exclude Defendant's Statements During Consensually-Recorded Conversations (R.89)*

On December 1, 2015, the government filed a motion to exclude two consensually-recorded telephone conversations between Aaron Rosenberg, who was cooperating with law enforcement at the time of the conversations, and defendant John Bills. (R.89). In support, the government argued that Bills' exculpatory statements made during these recorded conversations are hearsay if offered by Bills, and there is no valid hearsay exception that applies. (*Id.*, at 3-6). In response, Bills asserted that his statements made during these recordings fall under two exceptions to the hearsay rule: (1) Bills' statements constituted excited utterances under Federal Rule of Evidence 803(2), and (2) Bills' statements on the recordings

1

constitute a business record of the FBI under Federal Rule of Evidence 803(6). (R.105, at 2-6). Both contentions are wrong.

First, Bills' statements on the consensual recordings were not excited utterances. An excited utterance is a statement made relating to a "startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed.R.Evid. 803(2). "For an out of court statement to qualify under the excited utterance exception: (1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014).

Defendant claims that the "startling event" here was "[d]iscovering that [he] was the subject of a federal investigation . . . ." (R.105, at 3). Leaving aside the government's position that this is not the type of startling event contemplated by the Rule, Bills did not learn of being under federal investigation from Rosenberg during the recorded call, which is evident from the context of the call. The Chicago Tribune published an article regarding allegations surrounding Chicago's red light enforcement program and Bills as early as in or around October 2012, and the recorded calls occurred in or around February 2013, approximately four months later. During the recorded calls, Rosenberg and Bills simply discussed the allegations. Contrary to Bills' assertion, Rosenberg did not inform Bills during the calls that there was a federal investigation. Furthermore, given Bills' comment during one of the calls that someone may be listening and Bills' statement to Martin

2

O'Malley after the calls that he believed Rosenberg was wired, the statement lacks the indicia of reliability that underlies the excited-utterance hearsay exception. *Martinez v. McCaughtry*, 951 F.2d 130, 134 (7th Cir. 1991) (providing that "[t]he excited utterance exception is premised on the belief that a declarant is unlikely to fabricate statements while under the stress of a startling event").

Second, Bills' statements made during consensual recordings with a person cooperating with law enforcement are not business records of law enforcement. Business records fall under a hearsay exception because, among other things, they enjoy reliability from the fact that "the record was made at or near the time by – or from information transmitted by – someone with knowledge." Fed.R.Evid. 803(6). "Businesses have incentives to keep accurate records germane to their business, and so the material contained in those records is more likely to be truthful than the average hearsay." *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000).[1] This is true, in part, because "the statements sought to be used in evidence for their truth value … [were] created or adopted by the business record keeper." *Id.* The reasoning in support of the reliability of the business record exception to the hearsay rule, therefore, does not apply "to information received rather than prepared by the business." *Id.* In such an instance, the inquiry "is not controlled by the status of the recording person," but rather, whether the information has been

---

[1] The Court in *Santos* addressed whether complaints filed by an employee contained within the Board of Ethics' files constituted a business record of the Board of Ethics. 201 F.3d at 963. The Seventh Circuit answered no, "unless they are verified by the business and thus adopted and become the business's own statements," which did not happen there. *Id.*; *see id.* ("The complaints were inadmissible hearsay interleaved with admissible business records.")

3

verified. *United States v. Zapata*, 871 F.2d 616, 625 (7th Cir. 1989), *abrogated on other grounds by United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc). Accordingly, "if the source of the information is an outsider, Rule 803(6) does not by itself permit the admission of the business record. The outsider's statement must fall within another hearsay exception…." *Datamatic Services, Inc. v. United States*, 909 F.2d 1029 (7th Cir. 1990).

The advisory committee notes also make this point, highlighting the source of the information within the business record:

> Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of business." If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.

Fed.R.Evid. 803(6) advisory committee notes (1972 Amendments).

The consensual recording here contains "information received rather than prepared" by the FBI. Further, not only has Bills' statements not been verified, but the government contends that the recording contains false exculpatory and self-serving statements. The government's contention is bolstered by Bills' own statement on the first recording that "you don't know who's listening to you right now," coupled with co-defendant O'Malley's anticipated testimony that, sometime after the recorded calls, Bills advised O'Malley that he believed Rosenberg was

4

wearing a wire during the call.[2] In this way, the recording is the opposite of a business record insofar as it lacks any indicia of reliability or accuracy. Assuming the recording of the conversation between Bills and Rosenberg was done in the ordinary course of business of the FBI, Bills' statements nonetheless constitute hearsay insofar as they are being offered for their truth. While Bills has attempted to offer a hearsay exception to the recording itself, he has not articulated an exception for his own statements on the recording, which he must do. *See United States v. Christ*, 513 F.3d 762, 769 (7th Cir. 2008) ("While the admission of business records as an exception to the hearsay rule is well established, statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception.") (internal citation and quotation marks omitted). Accordingly, defendant's statements on the recording are not admissible under the business record exception.

Lastly, Bills contends that Rosenberg may be impeached with statements he made on the recording. (R.105, at 6). For example, Bills points out that, on the recording, he stated that he never paid Rosenberg a bribe in exchange for anything, to which Rosenberg responded, "I know and it's true." (*Id.*). According to Bills, if

---

[2] The unreliability of Bills' statements provides another reason for their inadmissibility as a business record. *See* Fed.R.Evid. 803(6)(E) (providing that a record of an act, event, condition, opinion or diagnosis constitutes a business record if, among other requirements, the opposing party cannot show that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness").

Rosenberg testifies to something different at trial, he may impeach him. (*Id.*). Bills is mistaken.

Bills' argument ignores the reality of the recorded conversation. Bills should not be permitted to impeach Rosenberg with his recorded statements because it is not actual impeachment in light of context, namely Rosenberg, as part of cooperation with the FBI, engaged Bills about getting on the "same page" and getting their "stories straight," and in doing so, went along with Bills' narrative by agreeing he did not pay bribes. In that context, Rosenberg's agreement is not a prior inconsistent statement, nor is it probative of his credibility. And, assuming arguendo there is any probative value from these statements, that value is substantially outweighed by the risk of juror confusion under Rule 403 without the full and proper context of the conversation, including Bills' seeming acknowledgement that the calls were being recorded.

To the extent any cross-examination of Rosenberg with respect to this statement is permitted, it should be limited to a narrow question that places the statement in the proper context, i.e., "during a consensually recorded call while cooperating with law enforcement, did you (Rosenberg), as part of your cooperation and with law enforcement monitoring the conversation, indicate that you did not pay any bribes to the defendant?"[3] Significantly, if Bills is allowed to impeach

---

[3] If the Court were to allow Bills to ask Rosenberg about Rosenberg's statement on the recording as outlined above, the government would seek to redirect the witness as to the circumstances of the recorded call and provide proper context to the jury, namely that (i) Rosenberg made two calls at the direction of law enforcement and proposed during the calls that he and the person he called should be on the "same page" and "get [their] stories

Rosenberg through such a question, then the identity of the person to whom Rosenberg was speaking is irrelevant and Bills should not be permitted to tell the jury that Rosenberg agreed with Bills' false exculpatory statement, which, as demonstrated above, is hearsay when presented by defendant. Any inquiry beyond the question proposed above, or playing any part of the recording itself (which is hearsay if offered by Bills),[4] would be improper impeachment.

B. *Santiago Proffer (R.94)*

On December 1, 2015, the government filed a *Santiago* proffer to conditionally admit coconspirator statements, detailing the existence of a conspiracy, Bills' participation in that conspiracy, and examples of statements made in furtherance of the conspiracy. (R.94). On December 8, 2015, defendant filed a response, in which he argued, among other things, that any statements that "involved" Bruce Higgins, former CEO of Redflex, were inadmissible because the government does not intend to call Higgins as a witness, and therefore, Bills would be unable to cross-examine Higgins in violation of the Confrontation Clause. (R.106, at 6-7). Defendant is mistaken.

Any statement made by Higgins or that otherwise involved Higgins, if made in furtherance of the conspiracy, would be admissible as a coconspirator statement and does not invoke the Confrontation Clause, regardless of whether Higgins testifies. *See United States v. Jones*, 314 F. App'x 883, 886-887 (7th Cir. 2009)

---

straight", and (ii) during the call, the person Rosenberg called expressed a concern that others were listening to the call.

[4] The government reserves the right to offer the recording itself as it is a statement of the opposing party.

(citing *United States v. Hargrove*, 508 F.3d 445, 449 (7th Cir. 2007) ("Statements of a coconspirator are not testimonial because they are considered party admissions, not hearsay.")). In *Hargrove*, the Seventh Circuit explained how the Supreme Court in "*Crawford [v. Washington*, 541 U.S. 36 (2004)] addressed the Confrontation Clause limitations on the admission of testimonial hearsay, but the coconspirator statements made by [declarant] are neither hearsay nor 'testimonial' as the Supreme Court has defined that term in *Davis [v. Washington*, 547 U.S. 813 (2006)]. Accordingly, they need not satisfy the Confrontation Clause requirements identified in *Crawford* in order to be admissible." *Hargrove*, 508 F.3d at 448-49 (internal citation omitted). Thus, when a statement is not hearsay, such as a coconspirator statement, the Confrontation Clause is not implicated and the Sixth Amendment is satisfied by allowing cross-examination of the witness offering the statements.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court grant the government's motion to exclude the admission of defendant's false exculpatory statements made during two consensually-recorded conversations, and deny defendant's objections to the government's *Santiago* proffer.

                Respectfully submitted,

                ZACHARY T. FARDON
                United States Attorney

By:  /s/ *Zachary T. Fardon*
      ZACHARY T. FARDON
      LAURIE BARSELLA
      TIMOTHY J. STORINO
      Assistant United States Attorneys
      219 South Dearborn Street, Suite 500
      Chicago, Illinois 60604
      (312) 353-5300

Date: December 16, 2015.