UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 14 CR 135-1 |
| | ) | |
| JOHN BILLS | ) | Judge Virginia M. Kendall |

MOTION OF THE UNITED STATES FOR ENTRY OF
PRELIMINARY ORDER OF FORFEITURE

The United States of America, through ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, moves for entry of a preliminary order of forfeiture as to specific property pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Fed. R. Crim. P. 32.2, and in support thereof submits the following:

1. On August 13, 2014, an indictment was returned charging JOHN BILLS with devising and intending to devise, and participating in a scheme to defraud the City of Chicago of money, property and the intangible right to honest services by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts in violation of 18 U.S.C. § 1346, among other violations.

2. Pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the indictment sought forfeiture to the United States of all money and property that constituted and was derived from the proceeds traceable to the violations, estimated at the time of the indictment as including approximately

$613,400 and the proceeds derived from the sale of the condominium at 1633 East Lakeside Drive, Unit 113, Gilbert Arizona.

3. Beginning on January 13, 2016, a jury trial was held before this Court.

4. On January 26, 2016, the jury returned a verdict of guilty against defendant JOHN BILLS as to Counts One through Seventeen of the indictment, which charged him with violations of 18 U.S.C. §§ 1341, 1343, 1346, 1951, 371 and 666, thereby making certain property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).[1] 18 U.S.C. § 981(a)(1)(C) states in part:

> (a)(1) The following property is subject to forfeiture to the United States:
>
> > (C) any property real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense.

5. Because of the defendant's conviction of the above violations, funds in the amount of $680,107 are subject to forfeiture pursuant to the provisions 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as proceeds traceable to the violations of conviction. The determination of the amount to be forfeited is properly before this Court as part of sentencing.[2]

---

[1] Bills was also found guilty as to Counts Twenty-One through Twenty-Three of the indictment, which charged tax fraud under 26 U.S.C. § 7206(1).

[2] "[A] defendant has no Sixth Amendment right to have a jury determine what property is subject to forfeiture," *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005), and here, where the government seeks only monetary forfeiture, the rule governing jury determination of the forfeitability of specific property (Fed. R. Crim. P. 32.2(b)(5)(A)) is not applicable. *See, e.g., United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012).

6. The amount of $680,107 as subject to forfeiture is well supported by the evidence that was presented at trial. Martin O'Malley testified that BILLS arranged for O'Malley to be employed as a Redflex customer service representative and negotiated terms in O'Malley's employment contract that provided for lucrative commissions and bonuses, which BILLS kept for himself in exchange for his assistance to Redflex in its efforts to get, keep and grow the Chicago red light camera contracts. BILLS received these commissions and bonuses through O'Malley in several ways:

(a) As O'Malley recounted in his trial testimony, O'Malley withdrew over $580,000 in cash from the commissions and bonuses that he received from Redflex from 2006 through 2012, $557,000 of which he gave to BILLS. This testimony was corroborated by bank records documenting the cash withdrawals and by additional records that showed a number of instances where O'Malley's cash withdrawals: (i) occurred very shortly before BILLS and O'Malley met for lunch, during which meetings O'Malley testified that he gave BILLS cash payments; (ii) occurred very shortly before BILLS left on trips during which there was no evidence of credit card activity; and (iii) occurred very near BILLS' expenditure of significant amounts of cash, such as his purchase of a Mercedes for $12,500 in cash and his cash reimbursement of Tina Chronis's credit card purchase of approximately $2,200 in airline tickets.

(b) The testimony of O'Malley, Michael Noonan, and Anthony Rudis established that at BILLS's direction, O'Malley gave BILLS $24,950 worth of checks written on O'Malley's bank account that were used to pay BILLS's debts.

(c) As shown by the testimony of O'Malley and Jack Jarzynka, in May 2008, at BILLS's request, O'Malley used commissions he received from Redflex to purchase for BILLS a condominium in Arizona that BILLS and his then wife selected. Based on the testimony of O'Malley, Jackie Bills, and Deborah McMahon, as well as records and documents, it was shown that for years, BILLS used the condominium as his own, hosting his family and his girlfriend on a number of occasions, making use of the condominium complex's clubhouse, and even shipping his Mercedes to the condominium's address.[3] At trial, FBI Special Agent Craig Henderson introduced into evidence a summary chart, Government Exhibit 306_AZ Condo Expenses, which listed the condo expenses that O'Malley paid for, including mortgage payments, condo association fees, clubhouse fees, payments for cable television, and even repair of the condo's air conditioner. From 2008 through 2012, O'Malley paid a total of $178,940.51 in expenses for the purchase and upkeep of the condo for BILLS's use. BILLs and O'Malley agreed that O'Malley would sell the condo after the Chicago Tribune published articles questioning the relationship between O'Malley and BILLS. In 2013, O'Malley received $98,837 in proceeds from the sale. The government requests that BILLS be ordered to forfeit the amount of

---

[3] O'Malley visited the condo just three times – once with BILLS, when O'Malley bought furniture for condo; once with his wife, who was sick at the time; and once with his son when he readied the condo for sale in 2013.

4

the expenses that O'Malley paid for the purchase and upkeep of the condo, minus the $98,837 in proceeds that O'Malley received from the sale of the condo, or $80,103.[4]

    (d)  O'Malley and Aaron Rosenberg testified that they treated BILLS to thousands of dollars' worth of expenses, such as meals, trips, hotel stays, and rental cars, that were paid for by Redflex in return for BILLS's continued assistance to Redflex in its efforts to get, keep and grow the Chicago red light camera contracts. After reviewing many expense reports and the receipts and documents underlying the expense reports, O'Malley and Rosenberg testified that they supplied BILLS with expenses worth approximately $3,808 and $14,246, respectively, for which they were then reimbursed by Redflex.

Thus, the evidence presented at trial more than sufficiently supports that $680,107 are subject to forfeiture by JOHN BILLS pursuant to the provisions 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as proceeds traceable to the violations of conviction.

  7.  Pursuant to Fed. R. Crim. P. 32.2(b)(2)(B), unless doing so is impractical, the court must enter the preliminary order of forfeiture sufficiently in

---

[4] Although the proceeds from the sale of the condo are listed in the indictment's Forfeiture Allegation as interests of both BILLS and O'Malley that are subject to forfeiture, and BILLS and O'Malley can be held jointly and severally liable for those proceeds, the government has entered into a plea agreement with O'Malley wherein O'Malley has agreed to the forfeiture of the $98,837 that he received in proceeds from the sale of the condo, and the government is not asking that the forfeiture order against BILLS include these proceeds.

advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant at sentencing.

8. In accordance with this provision, the United States requests that this Court enter a personal money judgment in the amount of $680,107, and further enter a preliminary order of forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) forfeiting all right, title, and interest defendant JOHN BILLS has in funds in the amount of $680,107.

9. Furthermore, 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), provides that if funds to satisfy the personal money judgment entered against defendant JOHN BILLS as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. have been transferred or sold to, or deposited with, a third-party;

    c. have been placed beyond the jurisdiction of the Court;

    d. have been substantially diminished in value, or

    e. have been commingled with other property which cannot be divided without difficulty;

the United States shall request that this Court order the forfeiture of any other property belonging to defendant JOHN BILLS up to the value of the entered judgment amount, in order to satisfy the money judgment entered by the Court.

10. Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Fed. R. Crim. P. 32.2, the United States requests that the terms and conditions of this

preliminary order of forfeiture entered by this Court be made part of the sentence imposed against defendant JOHN BILLS and included in any judgment and commitment order entered in this case against him.

WHEREFORE, pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Fed. R. Crim. P. 32.2, the United States requests that this Court enter a personal money judgment against defendant JOHN BILLS in the amount of $680,107, and further enter a preliminary order of forfeiture as to the foregoing funds in accordance with the draft preliminary order of forfeiture which is submitted herewith.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: *s/Laurie Barsella*
LAURIE BARSELLA
TIMOTHY STORINO
Assistant United States Attorneys
219 S. Dearborn St., Room 500
Chicago, Illinois 60604
(312)353-5300