**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | No. 14-CR-135 |
| | ) | |
| vs. | ) | Honorable Virginia Kendall |
| | ) | District Judge |
| JOHN BILLS | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHN BILL'S CONSOLIDATED POST-TRIAL MOTIONS**

Law Office of Nishay K. Sanan
53 W. Jackson Boulevard,
Suite 1437
Chicago, Illinois 60604
(312) 692-0360
nsanan@aol.com

Law Office of Stephen F. Hall
53 W. Jackson Boulevard,
Suite 1437
Chicago, Illinois 60604
(312) 810-9779
sfh@stephenhalllaw.com

## TABLE OF CONTENTS

**Page**

Table of Authorities ..... iii

I Background ..... 1

II Argument ..... 2

a Motion for Judgment of Acquittal ..... 2

b This Court Must Grant a New Trial Based on Admission of Hearsay Statements, Which Was in Error ..... 4

i The government failed at trial to establish by a preponderance of the evidence the existence of a conspiracy ..... 6

ii The government failed at trial to establish by a preponderance of the evidence that Bills was a member of any conspiracy ..... 7

iii The statements offered at trial failed to prove by a preponderance of the evidence that statements were made in furtherance of Bills' alleged conspiracy ..... 9

iv Former Redflex employee Higgins is the declarant of many hearsay statements offered into evidence, but was unavailable for cross-examination as to those statements ..... 10

c This Court Must Grant Bills' a New Trial Due to Pre-Trial Publicity and this Court's Denial of Bills' Related Motion for Change of Venue ..... 12

III Conclusion ..... 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) .................................................. 5, 7, 9

*Brecheen v. Oklahoma*, 485 U.S. 909 (1988) ........................................................... 12

*Crawford v. Washington*, 541 U.S. 36 (2004) .......................................................... 10

*Chistoffel v. United States*, 338 U.S. 84 (1949) .......................................................... 3

*Garlington v. O'Leary*, 879 F.2d 277 (7th Cir. 1989) .................................................. 9

*Irvin v. Dowd*, 366 U.S. 717 (1961)........................................................................ 12

*Krulewitch v. United States*, 336 U.S. 440 (1949)....................................................... 5

*Mu'Min v. Virginia*, 500 U.S. 415 (1991)................................................................ 13

*Patton v. Yount*, 467 U.S. 1025 (1984) ..................................................................... 14

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ............................................................. 12

*United States v. Benjamin*, 116 F.3d 1204 (7th Cir. 1997)........................................... 6

*United States v. Coe*, 718 F.2d 830 (7th Cir. 1983)..................................................... 6

*United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989) ................................................. 9

*United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990)........................................ 7, 8

*United States v. Foster*, 711 F.2d 871 (9th Cir. 1983).................................................. 9

*United States v. Haynie*, 179 F.3d 1048 (7th Cir. 1999)................................................ 5

*United States v. Hunt*, 272 F.3d 488 (7th Cir. 2001) .................................................... 6

*United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980) .............................................. 9

*United States v. Marrow*, 971 F.Supp. 1254 (N.D. Ill. 1997)........................................ 7

*United States v. Mortensen*, 322 U.S. 369 (1944) ........................................................ 3

*United States v. Moya*, 721 F.2d 606 (7th Cir. 1983) ................................................... 3

*United States v. Nettles*, 476 F.3d 508 (7th Cir. 2007) .................................................. 13

*United States v. de Ortiz*, 883 F.2d 515 (7th Cir. 1989) .................................................. 7

*United States v. Pagan*, 196 F.3d 884 (7th Cir. 1999).................................................... 7

*United States v. Pallais*, 921 F.2d 684 (7th Cir. 1990).................................................. 5

*United States v. Pearson*, 113 F.2d 758 (7th Cir. 1997)................................................ 2

*United States v. Peters*, 791 F.2d 1270 (7th Cir. 1986) ................................................ 14

*United States v. Petty*, 132 F.3d 373 (7th Cir. 1997) ..................................................7-8

*United States v. Philpot*, 733 F.3d 734 (7th Cir. 2013) ................................................ 12

*United States v. Pope*, 739 F.2d 289 (7th Cir. 1984) ...................................................... 3

*United States v. Pust*, 798 F.3d 597 (7th Cir. 2015) ...................................................... 5

*United States v. Roman*, 728 F.2d 846 (7th Cir. 1984).................................................. 3

*United States v. Skilling*, 130 S. Ct. 2896 (2010) ........................................................ 12

*United States v. Van Daal Wyk*, 840 F.2d 494 (7th Cir. 1988)...................................... 7

*United States v. Villasenor*, 664 F.3d 673 (7th Cir. 2011)............................................ 5

**Statutes**

18 U.S.C. § 1341 ............................................................................................ 1

18 U.S.C. § 1343 ............................................................................................ 1

18 U.S.C. § 1951 ............................................................................................ 1

18 U.S.C. § 371 .............................................................................................. 1

18 U.S.C. § 666 .............................................................................................. 2

26 U.S.C. § 7206 ............................................................................................ 2

**Rules**

Fed. R. Evid. 801(d)(2)(E) .......... 4-5, 9

Fed. R. Crim. P. 21 .......... 12

Fed. R. Crim. P. 29 .......... 2

**Other Authorities**

Amend. VI, United States Constitution .......... 12

David Kidwell, *Central figure in Chicago's red-light camera bribery scandal goes on trial*, Chicago Tribune, January 11, 2016 .......... 13-14

David Kidwell, *Ex-City Official Guilty in Redflex Bribe Case*, Chicago Tribune, Wednesday, January 27, 2016 .......... 6

**DEFENDANT JOHN BILL'S CONSOLIDATED POST-TRIAL MOTIONS**

Now comes JOHN BILLS, by and through his attorneys, Nishay K. Sanan and Stephen F. Hall, and respectfully moves this honorable Court to grant Defendant Bills' Consolidated Post-Trial Motions. In support thereof, Mr. Bills' states as follows:

## I. Background

Relevant to the case at bar, Defendant Bills worked for the City of Chicago from June 1979 until he retired in June 2011. In his position as Managing Deputy Commissioner, Bills managed Chicago's red light camera program since its initiation in late 2002 until his retirement. Redflex developed and manufactured digital photo enforcement systems, including red light cameras. The other defendants in the case, Martin O'Malley and Karen Finley, worked for Redflex.

In October 2003, Chicago and Redflex entered into a contract for the installation and operation of the red light cameras. The Government alleged that Chicago awarded Redflex the contract at Bills' instruction after he received bribe and personal financial benefits from Redflex. In 2012, the Chicago Tribune began reporting on the relationship between Bills and Redflex in connection with the red light camera contract. The indicted Bills on August 13, 2014, with more than twenty counts. Specifically, the Indictment charged Bills with twenty counts in total, including mail fraud in violation of 18 U.S.C. § 1341 (county I-IX); wire fraud in violation nof 18 U.S.C. § 1343 (Counts X-XII); extortion in violation of 18 U.S.C. § 1951(a) (Count XIII); conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (County XIV); solicitation and acceptance of bribes concerning a program that receives federal funds in

violation of 18 U.S.C. § 666(a)(1)(B) (Counts XV-XVII); and submitting fraudulent tax returns in violation of 26 U.S.C. § 7206(1) (Counts XXI-XXIII). *See* Dkt. No. 20.

This matter proceeded to trial on January 11, 2016. At the close of nearly two weeks of evidence, the parties rested their cases, arguments were heard, and the jury began their deliberations. After approximately six hours, the jury returned verdicts of guilty on all counts.

## II. Argument

### a. Motion for Judgment of Acquittal

Pursuant to Federal Rule of Criminal Procedure 29, Defendant Bills moves this Court to set aside the jury verdict in this case and enter a Judgment of Acquittal. Defendant Bills properly argued a Motion for Judgment of Acquittal at trial and now renews that Motion.

At trial, the Government's evidence was insufficient to sustain a verdict of guilty and Rule 29 provides this Court with the appropriate avenue for relief. Federal Rule of Criminal Procedure 29(a) states as follows:

> (a) Before Submission to the Jury
> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

*Id*. The Rule allows this Court to reserve ruling, (Rule 29(b)), and also allows for this Court to grant a Motion for Judgment of Acquittal after discharge of the jury. *See* Rule 29(c). The latter situation applies here.

A sufficiency of the evidence challenge requires this Court to determine if the evidence could support the conviction when viewed in the light most favorable to the Government. *United States v. Pearson*, 113 F.2d 758, 761 (7th Cir. 1997). The same standard announced in *Pearson* applies to Defendant Bills' request for a Judgment of Acquittal:

> A motion for acquittal may not be granted if, viewing the evidence in the light most favorable to the prosecution, there is relevant evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [citation omitted]. When applying this standard, a judge must, of course, keep in mind that it is the [finder of fact] which has the exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw reasonable inferences from the evidence presented.

*United States v. Pope*, 739 F.2d 289, 291 (7th Cir. 1984); *citing United States v. Roman*, 728 F.2d 846, 857 (7th Cir. 1984). Defendant Bills maintains that the evidence adduced at trial, taken in the light most favorable to the prosecution, failed to prove his guilt beyond a reasonable doubt. *See United States v. Moya*, 721 F.2d 606, 610 (7th Cir. 1983). A guilty verdict can only be sustained if there was sufficient credible and probative evidence which proved beyond a reasonable doubt that Defendant Bills was guilty of each element of the crimes charged. *United States v. Mortensen*, 322 U.S. 369 (1944). Failure to prove an essential element entitles the defendant to an acquittal. *Christoffel v. United States*, 338 U.S. 84 (1949). In this case, the Government failed to prove with credible and probative evidence that Defendant Bills was involved in a conspiracy or scheme to defraud.

As argued at the close of the Government's evidence and at the close of Defendant Bills' case, the Government relied almost exclusively on three witnesses in this case: Karen Finley, Martin O'Malley, and Aaron Rosenberg. As was established during both the direct and cross-examinations of Finley and Rosenberg, both are admitted liars and had previously lied under oath. Although O'Malley had not previously lied under oath, his story was largely unsupported by anything other than his own self-serving statements. Defendant Bill's position was, and is, that these three witnesses are inherently unreliable. This Court should have disregarded their testimony in large part because it was not supported by anything other than their own statements or, arguably, documents which support their version of events only if you believe their

interpretations of those same documents. There were no independent witnesses who could testify to the meaning of various documents or the veracity of Finley, O'Malley, or Rosenberg's respective narratives.

Because the Government framed their entire case around the testimony of these three witnesses, and because this Court should have disregarded their testimony as inherently unreliable, the evidence presented at trial was insufficient to support a finding of guilt as to the mail fraud and wire fraud charges. As a result, this Court should now grant Defendant Bills' Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29.

**b. This Court Must Grant a New Trial Based on Admission of Hearsay Statements Which Was in Error**

Prior to the trial of this matter, the Government submitted its "Motion to Conditionally Admit Evidence Pursuant to Fed. R. Evid. 801(d)(2)(E)" ("Santiago Proffer"). *See* Dkt. No. 94. The Government's Santiago Proffer presentation followed its normal pattern by providing an overview of the charged conspiracy, a rehearsal of the governing law, and a capsule summary of its proposed evidence. After a detailed discussion of its case and supporting law, the Government listed the evidence which it sought to offer into evidence at trial, separated into the following categories:

- Conversations, as recounted by Rosenberg and Finley…
- Conversations, as recounted [by] Rosenberg, O'Malley and Johnson…
- Conversations and emails, as recounted by Rosenberg, O'Malley and Finley…
- Conversations and emails, as recounted by Rosenberg, O'Malley and Finley…
- Conversations and emails, as recounted by Rosenberg, Finley, and O'Malley…
- Emails, as recounted by Rosenberg and Finley…

- Conversations and emails, as recounted by Rosenberg, Finely, and other Redflex employees…
- Emails, as recounted by Rosenberg and Finley…

Dkt. No. 94, p. 55. The Government noted that the above categories were "not intended to be exhaustive…" rather, the Government was merely submitting a representative sample. *Id*. Based on the Governments representations, this Court conditionally admitted the evidence because it was "sufficiently detailed and, as alleged, properly state[d] the existence of a conspiracy." Dkt. No. 116. The sample evidence provided, and the evidence actually produced at trial; however, was entirely devoid of any statements by Defendant Bills.

"For a co-conspirators' statements to be admissible under FRE 801(d)(2)(E), the Government must establish by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statements were made in furtherance of the conspiracy. *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015), *citing United States v. Villasenor*, 664 F.3d 673, 681-82 (7th Cir. 2011). Courts have recognized that the coconspirator exception to the prohibition against hearsay evidence is a "narrow" one, *Krulewitch v. Untied States*, 336 U.S. 440, 444 (1949), "odd and artificial… as an original matter," and a "fiction." *United States v. Pallais*, 921 F.2d 684, 687-88 (7th Cir. 1990) (recognizing "the curious reasoning by which coconspirator statements are admissible"). The Government has the burden of proving all the necessary elements to admit hearsay statements by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999).

**i. The government failed at trial to establish by a preponderance of the evidence the existence of a conspiracy**

To properly admit coconspirator hearsay statements, the Government must establish the existence of a conspiracy; the Government must prove the existence of an agreement between two or more persons for the purpose of committing a criminal act. *See United States v. Hunt*, 272 F.3d 488, 495 (7th Cir. 2001). The Government "must present substantial evidence that a conspiracy existed and that the defendant agreed to join it," *see United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997) (internal quotation marks omitted), and this substantive evidence must prove by a preponderance of the evidence the existence of a joint venture between coconspirators. *See United States v. Coe*, 718 f.2d 830, 835 (7th Cir. 1983) (existence of joint venture necessary for admission of hearsay).

It is still a prerequisite to finding the existence of a conspiracy that there was an agreement between two coconspirators to enter into a joint venture, *i.e.*, there was a "combination between [the participants]." *Id*. The Government's evidence at trial was devoid of any demonstration of an agreement for a joint venture as testified to by a credible witness. Indeed, even a member of the jury later stated that there was no such evidence.

Following the jury verdict in this case, juror Michael Woerner gave the Chicago Tribune an interview and discussed the trial and deliberations. David Kidwell, *Ex-City Official Guilty in Redflex Bribe Case*, Chicago Tribune, Wednesday, January 27, 2016, A-1, A-8. In that interview, Woerner commented that the jury did not appreciate that the Government relied so heavily "on three key witnesses who had won deals," and further addressed the lack of actual connection of Bills to the alleged conspiracy. *Id*. at A-8. Woerner stated that "[y]ou wished there was a smoking gun, a picture of someone handing [Bills] cash, and there wasn't." *Id*. The Government was unable to establish by a preponderance of the evidence that there was, in fact, a

conspiracy in which Bills was involved. Therefore, the hearsay statements of alleged coconspirators should not have been admitted in evidence; to do so was in error.

**ii. The government failed at trial to establish by a preponderance of the evidence that Bills was a member of any conspiracy.**

Although the Government submitted a lengthy explanation in its Santiago Proffer of what it believes demonstrates Bills' membership in a conspiracy, and argued its position at trial, the Government must still establish that the defendant and the alleged declarants were members of the same conspiracy in order to admit the alleged coconspirator hearsay. *See Bourjaily*, 483 U.S. at 175. "A defendant's mere knowledge of, approval of, association with, or presence at a conspiracy is insufficient to establish the participation element." *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir. 1990); *see also United States v. Van Daal Wyk*, 840 F.2d 494, 498 (7th cir. 1988). A member of a conspiracy cannot make the defendant a member simply by asserting the defendant's participation – the defendant's membership in the conspiracy, if any, must be based on the evidence limited to him. *See United States v. de Ortiz*, 883 F.2d 515, 520 (7th Cir. 1989), *aff'd en banc*, 907 F.2d 629 (1990). The Government must show that the defendant knew of the conspiracy and intended to join its criminal purpose – there must be a "participatory link" between the defendant and the conspiracy. *See United States v. Pagan*, 196 F.3d 884, 889 (7th Cir. 1999). The Government is obligated to demonstrate the participatory link in its proffer and certainly at trial prior to the introduction of coconspirator statements into evidence.

The determination whether a defendant joined a conspiracy "is individual; each defendant is entitled to separate consideration of his alleged participation." *United States v. Marrow*, 971 F.Supp. 1254, 1257 (N.D. Ill. 1997). To establish Bills' membership in a conspiracy, the Government needed to produce evidence independent from the statements of the alleged

coconspirators. *United States v. Petty*, 132 F.3d 373, 380 (7th Cir. 1997). The Government failed to establish Bills' membership in the alleged conspiracy in its proffer and at trial.

Rather than demonstrating that Bills took part in any conspiracy, the Santiago Proffer demonstrated that the only conspiracy in this matter was among the employees of Redflex. Based on the statements in the Santiago Proffer, it seems that Bills did not more than have knowledge of, or possibly approval of Redflex's methods to secure a contract, if Bills did anything at all. As discussed above, a defendant's mere knowledge of or approval of a conspiracy is "insufficient to establish the participation element." *Durrive*, *supra*. The Government has failed to establish any matter with particularity in which bills is actually an active participant. The Government only succeeded via the Santiago Proffer in demonstrating a pervasive conspiracy within the ranks of Redflex. Such a showing is not enough for the Government to satisfy its burden. The Government fared no better in carrying its burden regarding the testimony at trial.

At trial, the Government needed to produce evidence independent of the statements of the alleged coconspirators to establish Bills' membership in a conspiracy. The only evidence at trial that established Bills' membership in a conspiracy was the testimony of coconspirators. While the Government may argue that it had other evidence - emails, flight itineraries, spending records - that supported the statements of the coconspirators, those witnesses confirmed that the other evidence is based on the interpretation of coconspirators. Just as the Government failed to carry its burden related to the Santiago Proffer, the Government failed its burden at trial as well.

**iii. The statements offered at trial failed to identify by a preponderance of the evidence particular statements in furtherance of bills' alleged conspiracy**

For a coconspirator's statement to be admissible, that statement must have been made "during the course and in furtherance of the conspiracy." *Bourjaily*, 483 U.S. at 175; Fed. R. Evid. 801(d)(2)(E). The "in furtherance" requirement "is a limitation on the admissibility of coconspirators' statements that is meant to be taken seriously." *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir. 1989). The statement of a coconspirator satisfies the "in furtherance" requirement "when the statement is 'part of the information flow between coconspirators intended to help each perform his role." *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989). The *Doerr* court expounded on its statement:

> We further explained that statements "in furtherance" of a conspiracy can take many forms, including statements made to recruit potential coconspirators, statement seeking to control damage to an ongoing conspiracy, statements made to keep coconspirators advised as to the progress of the conspiracy, and statements made in an attempt to conceal the criminal objectives of the conspiracy.

*Id*. at 951. Applicable here, the *Doerr* court explained what statements may be narrative:

> Narrative declarations, mere "idle chatter," and superfluous casual conversations, however, are not statements "in furtherance" of a conspiracy. *See Id*; *see also United States v. Foster*, 711 F.2d 871, 880 (9th Cir. 1983) (mere narrative declarations made without intent to induce assistance to the conspiracy, do not satisfy the "strict requirements" of Rule 801), *cert denied*, 465 U.S. 1103… (1984); *United States v. Lieberman*, 637 F.2d 95, 102 (2d Cir. 1980) (challenged testimony "smack[ed] of nothing more than casual conversation about past events. It is difficult to envision how it would have furthered the conspiracy.").

*Id*. In this case, the categories of statements offered by the Government in the Santiago Proffer, and offered at trial, were mere retelling of conversations and emails by Redflex employees. These recounted conversations by Rosenberg, Finley, and O'Malley, were not made in furtherance of any conspiracy involving Bills. Rather, they were at best made in furtherance of Redflex's own agenda, and at worst, were "idle chatter" and "superfluous casual conversation."

Such recounting of prior conversations were not "part of the information flow between coconspirators intended to help each perform his role." Thus, the Government failed to demonstrate that the statements in the Santiago Proffer, and those ultimately offered at trial, were in furtherance of a conspiracy involving Bills.

**iv. Former Redflex Employee Higgins is involved in many statements, yet was unavailable for cross-examination as to those statements**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." The Court in *Crawford v. Washington* held that the Confrontation Clause applies to "witnesses against the accused – in other words, those who bear testimony." 541 U.S. 36, 51 (2004) (internal citations omitted). In this matter, the Government introduced ample hearsay statements by Bruce Higgins[1] by way of other witnesses. By eliciting Higgins' statements from other witnesses, the Government avoided the mandates of the Confrontation Clause.

In discussing the alleged evidence of a conspiracy and those statements which may support such a conspiracy, the Government detailed numerous conversations involving Higgins by way of Aaron Rosenberg's testimony. These conversations included:

- Rosenberg advising Higgins of a request to pay for a hotel room and Higgins approved the request;
- On February 6, 2003, Rosenberg send an email to Higgins and Finley, entitled "chicago Update: Very Important";
- IN an email from Rosenberg to Higgins dated may 18, 2003, Rosenberg and Higgins discussed a long conversation with Bills;
- Rosenberg and Higgins discussed the need to schedule a trip to Chicago to assist Bills;
- In a May 19, 2003 email, Higgins agreed to a plan and mentioned Bills;

[1] Bruce Higgins was Aaron Rosenberg's superior and the Chief Executive Officer of Redflex from 2001 through 2005.

- In an email dated May 23, 2003, Rosenberg advised Higgins and Finley that he had been working with Bills;

- On Sunday, may 25, 2003, Rosenberg sent another email to Higgins and Finley, stressing the importance of Web Ops;

- In June 2003, Bills allegedly made inculpatory statements at a dinner with Redflex employees, including Higgins;

- Higgins instructed alleged payments to Bills to be funneled through the customer service representative Martin O'Malley;

- In an email dated September 12, 2003, Higgins advised Rosenberg and Finley about Redflex's financial situation, and made further statements related to Bills;

- In October 2003, Bills allegedly forwarded emails from Dolinsky to Higgins;

- In July 2003, Higgins called O'Malley to discuss an interview with Redflex;

- On July 24, 2003, Higgins interviewed O'Malley along with Finley;

- Finley understood from Higgins, that O'Malley and Bills were friends;

- On August 5, 2003, Finley send an email to Higgins with O'Malley's services agreement;

- Part of the August 5, 2003 services agreement required Higgins' input, specifically the amount of commissions;

- On October 17, 2003, Finley forwarded a prior email to Higgins again requesting his input as to commission amounts.

Dkt. No. 94, pp. 14, 16, 17, 18, 19, 20, 21, 22, 23; Government Exhibits 95, 36, 53, 97, 98, 101. The above statements specifically involved Higgins. Higgins was unavailable to testify, and was not subject to cross-examination. Higgins' statements were testimonial in nature, and should not have been admitted without Higgins being subject to cross-examination. Allowing Higgins statements in evidence was in error.

### c. This Court Must Grant Bills' a New Trial Due to Pre-Trial Publicity and this Court's Denial of Bills' Related Motion for Change of Venue

A criminal defendant has the absolute right to be tried by a fair, impartial jury of his peers. U.S. Const. Amend. VI; *United States v. Skilling*, 130 S. Ct. 2896, 2912-13 (2010). Without "a panel of impartial, 'indifferent' jurors" the defendant's due process rights are compromised. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Although the Constitution states that trials should occur in the "district wherein the crime shall have been committed," (U.S. Const. Amend. VI), the Federal Rules of Criminal Procedure create an exception when pre-trial prejudice warrants a change of venue:

> Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed. R. Crim. P. 21(a). In order to demonstrate such prejudice, a defendant must show that that "trial atmosphere… [is] utterly corrupted by press coverage." *Skilling*, 130 S. Ct. at 2914. This "presumption of prejudice" thus prevents him from being able to receive a fair trial in that jurisdiction. *Id*.

In evaluating a motion for change of venue, the court should look to a totality of the circumstances. *Brecheen v. Oklahoma*, 485 U.S. 909, 910 (1988). Courts may look to various factors, including: 1) the size and characteristics of the community where the crime occurred; 2) the nature of the news stories; and 3) the time that elapsed between the news coverage and the trial. *United States v. Philpot*, 733 F.3d 734, 741 (7th Cir. 2013), *citing Skilling*, 130 S. Ct. at 2915-16. A fourth factor which courts may consider is whether the source of the news stems from either defense or prosecution, wherein the court may step in and restrict the dissemination of information. *Sheppard v. Maxwell*, 384 U.S. 333, 367 (1966).

In January 2015, Bills filed a Motion for a Change of Venue due to pervasive media coverage surrounding the allegations against Bills. Dkt. No. 66. After a full briefing of the matter, this Court denied the Motion via a written Memorandum Opinion and Order. Dkt. No. 77. This Court held that three factors weighed against a change of venue. First, this Court found that the size of the community in which the trial was held supported keeping the venue in the Northern District of Illinois, Eastern Division because the District "is extremely vast, diverse, and bustling" and as a result "any potential for prejudice emanating from pretrial publicity is thoroughly mitigated." *Id*. at 5, *citing Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991). Second, the nature of the news stories focused on the alleged scheme or the red light camera program in general, rather than on Bills in particular. Dkt. No. 77, pp. 6-7. Third, as to the proximity of time between coverage and trial, this Court held that, "[b]ecause the proceedings in this case are not marred by 'pervasive and inflammatory pretrial publicity' where juror bias would be inevitable, the court concludes that a change of venue is not warranted." *Id*. at 8-9, *citing United States v. Nettles*, 476 F.3d 508, 513 (7th Cir. 2007). Ultimately this Court found that "[n]one of the factors leading to a presumption of prejudice stemming from pretrial publicity are present in this case." Dkt. No. 77, p. 9. While Bills respectfully disagrees with this Court's holding, the pretrial publicity situation changed from the June 12, 2015 issuance of this Court's decision and the January 11, 2016 start of the trial.

Focusing only on the Chicago Tribune as a representative example of local publicity, the Tribune published three separate stories between the denial of Bills' Motion for a Change of Venue empanelling of the jury. One story in particular, "Central figure in Chicago's red-light camera bribery scandal goes to trial," published on the morning of the first day of trial, January 11, 2016, highlights Bills, his "colorful 32-year career with the city," and how Bills "rode his

political connections to rise from street lamp maintenance man to the top Transportation Department official responsible for growing Chicago's fledgling red-light camera program." David Kidwell, *Central figure in Chicago's red-light camera bribery scandal goes on trial*, www.chicagotribune.com/news/watchdog/redlight/ct-red-light-cameras-trial-met-0111-20160111-story.html, (last accessed February 21, 2016). While this is but one article, it provides an excellent representation of how media outlets covered Bills' nearing trial in the weeks prior to the empanelling of a jury and the start of evidence. But of course, this most recent coverage was nothing new.

Prior to the beginning of trial, the coverage of Bills' and the Government's allegations against him had been ongoing for more than a year and a half before the indictment was unsealed. This was in stark contrast to the publicity at issue in *Patton v. Yount*, where the Supreme Court found that the publicity had "softened" in the four years between the first and second trials. 467 U.S. 1025, 1032 (1984) (abrogated on other grounds). In *Patton*, the Court emphasized how citizens no longer had the same fixed opinions about a defendant's guilt, which proved that there could no longer be a presumption of innocence.

The Seventh Circuit came to a similar conclusion in *United States v. Peters*, where nearly a year had passed since the articles that the defendant submitted to the court had been published. 791 f.2d 1270, 1297 (7th Cir. 1986) (superseded by statute on other grounds). Here, by contrast, the media coverage has not ceased at any point and actually increased as the matter neared trial. For the reasons stated above and all those argued in the Motion for Change of Venue prior to trial, Defendant Bills respectfully submits that this Court erred in not granting his Motion. As a result, Bills' should be granted a new trial.

## III. Conclusion

Defendant Bills hereby requests this Court grant the above Motion for Judgment of Acquittal or, in the alternative, the above Motions for a New Trial.

Respectfully submitted this 22nd day of February, 2016.

/s/ Nishay K. Sanan____

Nishay K. Sanan,
One of the Attorneys for John Bills

Law Office of Nishay K. Sanan
53 W. Jackson Boulevard,
Suite 1437
Chicago, Illinois 60604
(312) 692-0360
nsanan@aol.com

/s/Stephen F. Hall____

Stephen F. Hall
One of the Attorneys for John Bills

Law Office of Stephen F. Hall
53 W. Jackson Boulevard
Suite 1437
Chicago, Illinois 60604
(312) 810-9779
sfh@stephenhalllaw.com