UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 14 CR 135-2 |
| v. | ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| | ) | |
| MARTIN O'MALLEY | ) | |

**PRE-SENTENCE MEMORANDUM AND OBJECTIONS**

Defendant, Martin O'Malley, by and through his attorney, Michael P. Gillespie, respectfully submits this Sentencing Memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. §3553(a). Defendant states as follows:

**OVERVIEW OF SENTENCING REPORT**

Martin O'Malley, pled guilty to Count 14 of indictment No: 14 CR 135-2. Count 14 states the Defendant committed the act of conspiracy, in violation of Title 18, United States Code, Section 666(a)(1)(B), in relation to the payment of bribes in exchange for City of Chicago contracts. Since this offense, Mr. O'Malley has cooperated with authorities to the best of his ability, and has complied with his pre-trial release conditions.

**GUIDELINES**

Base Offense Level – Par. 27-28:

Mr. O'Malley agrees that the base level for this offense is 12 per USSG §2C1.1(a)(2).

Special Offense Characteristics – Par. 29:

Mr. O'Malley agrees that the offense involved more than one bribe or extortion; therefore, a 2-level increase to the base level is warranted per USSG §2C1.1(b)(1).

Special Offense Characteristics – Par. 30:

Mr. O'Malley agrees that the payments and benefits received from Redflex were more than $550,000, but less than $1,5000,000 warranting a 14-level increase under USSG §2C1.1(b)(2) and USSG §2B1.1(b)(1)(H).

Special Offense Characteristics – Par. 37-38:

Mr. O'Malley agrees because the offense involved a public official (John Bills) in a high-level decision-making position that a 4-level enhancement is warranted. USSG §2C1.1(b)(3).

Adjustment for Acceptance of Responsibility – Par. 44:

Mr. O'Malley has clearly demonstrated acceptance of responsibility for the offense as evidenced by his entering a plea of guilty. Therefore, he is entitled to a 2 level reduction per USSG §3E1.1(a).

Adjustment for Acceptance of Responsibility – Par. 45:

Mr. O'Malley has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one addition level. USSG §3E1.1(b).

Total Offense Level – Par. 46:

Mr. O'Malley agrees that his total offense level is 29.

**THE DEFENDANT'S CRIMINAL HISTORY**

Criminal History Level – Par. 53:

Mr. O'Malley agrees that determination of his criminal history score of zero, establishing a criminal history category of I.

**SENTENCING OPTIONS**

**Custody**

Statutory Provisions – Par. 87:

> Mr. O'Malley agrees this offense carries a maximum term of 5 years of imprisonment pursuant to 18 U.S.C. §371.

Guideline Provisions – Par. 88:

> Mr. O'Malley agrees due to the statutorily authorized maximum sentence of five years is less that the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 60 months. USSG §5G1.1(a).

**Impact of Plea Agreement**

> Mr. O'Malley agrees that despite the two calculations result, the guideline range for imprisonment remains the same.

**Supervised Release**

Statutory Provisions – Par. 90:

> Mr. O'Malley agrees that the Court may impose a term of supervised release of not more than three years. 18 U.S.C. §3583(b)(2).

Guideline Provisions – Par. 91:

> Mr. O'Malley agrees that since the offense is a Class D Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2).

**Supervised Release Conditions**

> Mr. O'Malley agrees to the terms outlined by Probation Officer Melissa A. Ray.

**Probation**

Mr. O'Malley agrees that since the applicable guideline range is in Zone D of the Sentencing Table, he is ineligible for probation. USSG §5B1.1, comment (n.2).

**Fines**

Statutory Provisions – Par. 94:

Mr. O'Malley agrees the maximum fine is $250,000. 18 U.S.C. § 3571(b).

Special Assessment – Par. 95:

Mr. O'Malley agrees that a special assessment of $100 is mandatory. 18 U.S.C. § 3013.

Guideline Provisions – Par. 96:

Mr. O'Malley agrees the fine range for this offense is from $15,000 to $150,000. USSG §5E1.2(c)(3) and 5E1.2(h)(1).

**FACTORS TO CONSIDER FOR SENTENCING**

The purpose of sentencing as reflected in 18 U.S.C 3553 is not to be punitive but rather to be just based on the offense and offender. Under 18 U.S.C. §3553(a)(2) the Court shall impose a sentence sufficient, but not greater necessary to reflect the purposes of sentencing, including, the need for just punishment, the need for deterrence, protection of the public, and the rehabilitation of the defendant. §3553 also orders courts to consider the history and characteristics of the defendant as well as the history and circumstances of the offense.

**Nature and Circumstances of Offense**

**Nature of Offense**

Martin O'Malley accepted his employment with Redflex Traffic Systems Inc. when he met John Bills through Alcoholics Anonymous ("AA"). Bills recruited O'Malley to Redflex for purposes of acting as the conduit through which Bills obtained kickbacks. Bills knew O'Malley from AA meetings as someone who was vulnerable and struggling financially. Mr. O'Malley had

4

been employed with Gaslight of Illinois since his return from military service in Regional Sales, and was forced into unemployment when the company folded. Mr. O'Malley's wife Marilyn was suffering from terminal cancer, and as someone who was 62 years old at the time, Mr. O'Malley was facing a difficult job market.

Although Martin O'Malley played an integral role in the conspiracy, he was not compensated to the extent that other individuals involved were. Mr. O'Malley was compensated $60,000 a year for his employment with Redflex Traffic Systems Inc. while co-defendant John Bills' benefits amounted to approximately $680,000. Mr. Bills pocketed over $500,000 in cash and a flow of other benefits like: free meals, hotel stays, airfare, and golf outings; and a private sector job upon retirement. Additionally, Mr. Bills exercised continuous control and authority over Mr. O'Malley's involvement. The $177,000 condo purchased in Mr. O'Malley's named was primarily used by Mr. Bills who kept his personal Mercedes at the property, and enlisted Mr. O'Malley to make the purchase.

**Assistance to Authorities**

Martin O'Malley's exceptional assistance to authorities should be considered by the court in warranting a departure from calculated guidelines. By making a plea of guilty, Mr. O'Malley illustrates his understanding of his crime and certainty to refrain from this type of conduct in the future. Mr. O'Malley's assistance has not only helped authorities with the present case, but he has cooperated with other matters stemming from the conspiracy itself. A defendant's assistance to authorities in the investigation of criminal activities has long been recognized, in practice and by statute. Mr. O'Malley accepted responsibility pre-indictment, has been forthright with his involvement throughout this case, and has provided assistance to authorities in every way that has been requested of him.

Martin O'Malley has remained truthful, reliable, and provided complete and comprehensive information to the best of his knowledge and ability. Mr. O'Malley has testified on behalf of the government at co-defendant John Bills' trial. He has met with the Australian Federal Police to provide assistance regarding prosecution of Redflex Traffic Systems Inc., part of the Melbourne-based Redflex Holdings Group. Mr. O'Malley has cooperated at every instance requested with every potential legal facet stemming from the original conspiracy before and after facing charges himself. Therefore, Martin O'Malley's assistance to authorities should be considered by the court in warranting a departure from calculated guidelines.

**History and Characteristics**

**Offender Characteristics**

Martin O'Malley is the only child born to Emmitt and Ceal O'Malley, both of whom are deceased. Mr. O'Malley was raised on the south side of Chicago where his extended family lived in the same neighborhood, attended the same church, and his grandparents owned a popular neighborhood tavern. Mr. O'Malley's parents were both alcoholics and his father was physically abusive; Mr. O'Malley recalled his mother's family derided his father and referred to him as, "the man who beat our little sister." Mr. O'Malley's mother died in 1950 from complications relating to her alcohol abuse and he was 10 years old at the time of her death.

The death of his mother affected Martin O'Malley significantly and he began drinking alcohol to cope with his feelings. Mr. O'Malley also began to have "problems" with authority, which led him to get expelled from several schools. After graduation from high school, Mr. O'Malley was drafted by the United States Army, an experience that was "transformative." Mr. O'Malley worked in demolitions during his time with the United States Army in what was

labeled a "peace keeping" role. After being discharged, Mr. O'Malley returned to Chicago and worked in construction and as a car salesman, and his issues with alcohol resumed.

Martin O'Malley married Terry Cochran in 1970 while she was 19 and pregnant from her first husband. The two had a dysfunctional relationship, and in 1973, Ms. Cochran left without telling Mr. O'Malley, taking their 18-month-old daughter, Tracey Lynn O'Malley, with her. Ms. Cochran changed her social security number and name, and eventually put Tracy up for adoption. Mr. O'Malley never ceased efforts to find his daughter, and even attempted to be a guest on the Oprah Winfrey show in hopes of connecting with Tracey. After over 20 years of trying, Mr. O'Malley met his daughter Tracey in 1994. Tracey and Mr. O'Malley maintain regular contact, and are very close.

In 1977, Martin O'Malley married Marilynn O'Malley, whom encouraged Mr. O'Malley to seek inpatient substance abuse treatment at the hospital where she was employed (Lutheran General in Park Ridge, Illinois). The two had a good marriage, and lived a comfortable and happy life. Marilynn has a son from a previous relationship, Joseph O'Malley, who Mr. O'Malley raised as his own child. Mr. O'Malley has a close relationship with his step-son, sees him and his family frequently, and speaks with him regularly.

**Tracey O'Malley**

Tracey O'Malley shares the story of her father Martin O'Malley, who she provides has made such an impact on her and others. Tracey details how she learned how her mother had taken her brother and her directly from daycare, changed her name and social security number, and how her father was never contacted regarding her mother putting her up for adoption. Tracey saw 27 years of documentation that her father had never given up on her from attempting to

7

appear on the Oprah Winfrey Show, numerous unanswered letters, and letter's from her mother Terry asking her father for money even while her brother and her were in foster care.

Tracey has witnessed her father stay committed to his own sobriety, and the sobriety of others, for the past 16 years. She believes her father has demonstrated a passion and willingness to help others without becoming an obstacle through enabling him. She explains how she watched as he became her stepmother's caregiver when she was diagnosed with cancer, and how he has taken full responsibility for his actions. Tracey provides that her father is her rock and closest friend. (See Exhibit A).

**Joseph O'Malley**

Joseph O'Malley is Martin O'Malley's adopted son. Joseph describes how Mr. O'Malley did all the things a father would do to raise him the best he could from riding a bike to playing baseball and golf. Mr. O'Malley was there for Joseph to impart wisdom when he was having a hard time adjusting to school, and was there to pick up the pieces when things didn't go so well. Mr. O'Malley encouraged Joseph to join the army when he was unable to stay in high school, helped him handle his ADHD, and stimulated his interest in pursuing a lifelong trade and apply for the apprenticeship of the International Brotherhood of Electrical Workers ("IBEW"). Joseph attributes Mr. O'Malley for teaching him to be a better parent to his foster children, and has been a rock for him to lean on since the passing of his mother. Joseph is concerned about Mr. O'Malley's health concerns, and that incarceration could worsen them. (See Exhibit B).

**Karen O'Malley LPN**

Karen O'Malley is a Licensed Practical Nurse for the Department of Veteran's Affairs, Kankakee Based Outpatient Clinic, and has been Mr. O'Malley's daughter-in-law for the past 10 years. Karen, her husband Joseph, and their two foster children affectionately refer to Mr.

O'Malley as "Grandpa Marty". Karen explains how Mr. O'Malley comes to their house every other week for Sunday dinner, and also attends various school functions such as pre-school graduations. Their foster children look forward to visits with him, often ask to invite him to eat out with the family, and love to sit and read stories with him.

Karen provides that Martin O'Malley has offered words of wisdom to her for direction in her own circumstances. Mr. O'Malley has been there for her in times of grief, offered empathy, and a shoulder to lean on during times such as her mother's passing. Karen believes it would be a great loss to their family to not have him there for them. Karen's foster children have already suffered great losses in their short lives, and at their ages, it would cause them yet another one. (See Exhibit C).

## Health

Martin O'Malley's medical condition warrants a downward departure. §5H1.4 provides that physical condition may be relevant in determining whether a departure is warranted. Mr. O'Malley is diagnosed with several chronic conditions for which he receives regular medical treatment. Mr. O'Malley was diagnosed with hypertension, high cholesterol, and Type II diabetes approximately 20 years ago (1996). In a letter dated February 3, 2016, Mr. O'Malley's primary care physician, Dr. Hugh M. O'Neill, confirmed that the defendant is under his medical care and that, "… his [Mr. O'Malley] medical condition is considered fragile." (See PISR).

In a letter dated February 25, 2016, the defendant's cardiologist, Dr. Christopher J. Sullivan, wrote that Martin O'Malley is diagnosed with coronary artery disease and has undergone procedures to place stents in his heart. (See PSIR). Mr. O'Malley noted he had 3 stents placed prior to having a pacemaker placed in approximately 2012 to treat sick sinus syndrome (group of abnormal heart rhythms).

§5H1.4 outlines an "extraordinary" physical condition warrants a sentencing departure, and abnormal heart issues and Martin O'Malley's physician describing him as "fragile" meets this standard. This is supported by *U.S. v. Gee*, 226 F.3d 885 (7th Cir. 2000) which upheld finding that defendant's medical condition warranted downward departure. After reviewing medical records, watching a videotaped deposition of defendant's cardiologist, observing defendant at trial and during sentencing, and listening to in-court testimony of both defendant and his mental health therapist, the district court concluded that imprisonment posed a substantial risk to defendant's life and therefore departed downward under § 5H1.4. The government contended that defendant's physical condition was not an "extraordinary physical impairment" under § 5H1.4 and that the Bureau of Prisons ("BOP") could provide adequate medical care to defendant. The Seventh Circuit held that the district court did not abuse its discretion in concluding that defendant's medical condition warranted a downward departure. For these reasons, Martin O'Malley's medical condition warrants a downward departure.

**Age**

Martin O'Malley provides that his age (75 years old) should be considered by this court during sentencing. Section 5H1.1 provides that age "may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical case covered by the guidelines." If the defendant is elderly and infirm, however, and "where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration," age may be a reason to depart downward. *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000). "It is possible 'that an aged defendant with a multitude of health problems may qualify for a downward departure . . . [but] such downward departures are rare,"

but requiring, on resentencing that the district court "obtain independent and competent medical evidence to determine the extent of [the defendant's] infirmities and the prison system's ability or inability to accommodate them." *Id*. In *U.S. v. Carter*, 538 F.3d 784 (7th Cir. 2008), the court affirmed a sentence lower than the guideline range because, at age 61, the defendant posed a lower recidivism risk. Mr. O'Malley meets this standard through his age, and through possessing a multitude of health problems. Mr. O'Malley is an elderly individual who suffers from hypertension, high cholesterol, Type II diabetes, coronary artery disease, has three stents in his heart, has a pace maker, and has a history of depression and substance abuse. Although a downward departure for age is rare, the facts of Mr. O'Malley's case support a downward departure, and warrant consideration from the court.

**Defendant's good deeds; exceptional charitable, community, and military service**

The court should consider Martin O'Malley's past military service, his dedication to the Alcohols Anonymous community, and his other charitable contributions. U.S.S.G. §5H1.11 treats "military, civic, charitable, or public service; employment related contributions; and similar prior good works" as discouraged departure grounds. In light of *United States v. Booker*, 543 U.S. 220 (2005), this restriction is advisory only and does not preclude below-guideline sentences that reflect the §3553(a) factors. In *U.S. v. Thurston*, 544 F.3d 22 (1 Cir. 2008), the court affirmed district court's choice of 3 months rather than 60-month guideline term for Medicare fraud conspiracy of more than $5 million, citing, among other things, defendant's charitable work, community service, generosity with his time, and the spiritual support and assistance he provided others.

Mr. O'Malley was drafted into the United States Army out of high school, served two years, and was honorably discharged. Mr. O'Malley's role was centered around demolitions

during his time with the United States Army in what was labeled a peace keeping role. Since the successful completion of an inpatient 28-day alcohol treatment program in 1977, Mr. O'Malley has remained sober for almost 40 years, and has dedicated himself to helping others do the same.

Mr. O'Malley has founded support groups and sponsored recovering alcoholics. Martin O'Malley co-founded U Can Too, a meeting place for AA members; has a monumental involvement with Guildhaus, a halfway house; and has helped hundreds of individuals successfully obtain their sobriety. Mr. O'Malley has maintained support for individuals since his initial inpatient treatment in 1977. Mr. O'Malley has dedicated his entire life to others. He served his country honorably in the U.S. Army, and has dedicated himself to the AA community for decades, tirelessly devoting himself to charitable causes fighting alcohol addiction. For these reasons, and the letters below, Mr. O'Malley's good deeds; exceptional charitable, and military service should be considered.

**Hon. Judge Sheila Murphy (Ret.)**

The Honorable Judge Sheila Murphy (Ret.) knows Martin O'Malley through his work with 12 step meetings. Judge Murphy details the best way to deal with alcoholism is through service for others, and this service brings individuals in the 12 step program to the door of humility. (See Exhibit D).

**Anthony M. Barrett**

Attorney Anthony Barrett has known Martin O'Malley and his late wife, Marilyn, for more than 25 years. Barrett has known Mr. O'Malley to be a member of a twelve step program for all of the years that he has known him. Barrett represented the Village of Worth Park District where Mr. O'Malley co-founded a group known as the U Can Too, a successful meeting place for AA members for over 15 years. (See Exhibit E).

**Kevin Lavin**

Kevin Lavin is the Executive Director of Guildhaus, a Halfway House for men with drug and alcohol issues, spanning three locations and helping over 14,000. Mr. Lavin explains that Martin O'Malley has been involved with Guildhaus since its inception in 1987, has helped hundreds of men navigate early issues of recovery, and has been a sponsor to many of their clients. Lavin emphasizes that with Mr. O'Malley's help and guidance, hundreds of men have returned to their families, their jobs, and have gone on to achieve long term sobriety because of Mr. O'Malley's commitment to them. (See Exhibit F).

**Diana Nelson**

Diana Nelson has been a friend of Martin O'Malley's since 1978 since they met through Alcoholics Anonymous. O'Malley held out a welcoming hand to Ms. Nelson, and she could tell that he understood the shame she felt. Ms. Nelson describes how Mr. O'Malley was instrumental in setting up an AA club called You Can Too, how he worked tirelessly to get it off the ground, and how it now helps hundreds gain and maintain sobriety. Ms. Nelson details Mr. O'Malley's involvement in Guildhaus, a halfway house for men, which she calls "monumental."

Ms. Nelson explains how Mr. O'Malley devoted his time and gentle heart to caring for his wife when she was diagnosed with inoperable, and how he filled her final days with love and humor. When Ms. Nelson's husband was diagnosed with Pulmonary Fibrosis, Mr. O'Malley drove Ms. Nelson to daily AA meetings, and helped to keep her husband's spirits up in the most difficult times. Diana Nelson will always be grateful for Marty. (See Exhibit G).

**Francis X. Calderon**

Francis Calderon, a retired Chicago Police officer, details how Martin O'Malley has played an important role in his sobriety over the last 20 years. Many times when Mr. Calderon felt like giving up because of the stressful times in his life, Mr. O'Malley has been there to

support him. Mr. Calderon has observed Mr. O'Malley work with fellow A.A. members with the same kind of compassion and support he gave me. As a result, Mr. Calderon has spent 15 out of his 30 years of service with the Chicago Police Department as a Certified C.A.C.D./Substance Abuse Counselor, and maintains his certification with the state. Mr. Calderon continues to seek advice and guidance from Mr. O'Malley, and he believes Mr. O'Malley will continue to be an asset and assist others with sobriety. (See Exhibit H).

**John B. Kapustianyk Sr.**

John Kapustianyk has known Martin O'Malley for over 20 years. During that time, Mr. Kapustianyk has witnessed the positive influence Mr. O'Malley has had on the lives of numerous people seeking help, and he describes Mr. O'Malley as an avid support of those in the recovery community. Mr. Kapustianyk attributes Mr. O'Malley for countless men and women getting sober and maintaining their sobriety. Due to this actions, Mr. O'Malley has guided these individuals to have a more positive life, as demonstrated by their increased values for their family, employment, health, education, and social life. Mr. Kapustianyk explains Mr. O'Malley's continued guidance to those involved with recovering from substance abuse is a true illustration of his character. (See Exhibit I).

**Martin A. Lee**

Martin Lee, a retired Chicago Police Detective, has known Martin O'Malley for over 20 years, and considers him a close personal friend. Mr. Lee sees Mr. O'Malley at least three times a week at AA, has seen him given his time and consultation to countless troubled people, and describes him as a true example of humility. Mr. Lee asserts that in all his years and the hundreds of people he has known the AA program, he can say that Mr. O'Malley is a true leader and example for people attempting to change their lives. Mr. Lee knows that Mr. O'Malley was

desperate when he took the job from John Bills because he desperately needed a job with insurance due to his wife Marilyn being treated for terminal cancer. Mr. Lee believes many people in the AA community will be at a loss without his influence. (See Exhibit J).

**Ruth Bukalski**

Ruth Bukalski has known Martin O'Malley for 30 years and knows that he never fails to extend his hand to the still suffering, or new members of AA. Ms. Bukalski describes of Mr. O'Malley made sure his wife Tracey's final days with full of love and laughter. (See Exhibit K).

**Kelly King Hickey**

Kelly King Hickey describes how Martin O'Malley was instrumental in getting The Guildhaus, a halfway house for men suffering from alcohol and drug additions, started with her father. Ms. Hickey describes how Mr. O'Malley's efforts have gone towards Guildhaus saving thousands of men's lives. (See Exhibit L).

**CONCLUSION**

WHEREFORE, based on the foregoing, and taking into consideration his full payment of restitution and personal characteristics, Defendant Martin O'Malley respectfully asks this Court for leniency when imposing sentence.

                                            Respectfully submitted,

                                            */s/Michael P. Gillespie*
                                            Counsel for Martin O'Malley

MICHAEL P. GILLESPIE
*Counsel for Martin O'Malley*
The Law Offices of Gillespie & Gillespie
53 W. Jackson Blvd., Suite 1062
Chicago, IL 60604
Tel. (312) 588-1281
Fax (312) 588-1284

## CERTIFICATE OF SERVICE

I hereby certify that on August 30th, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States, Northern District of Illinois and said filing complies with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

s/ *Michael P. Gillespie*
Michael P. Gillespie

MICHAEL P. GILLESPIE
*Counsel for Martin O'Malley*
The Law Offices of Gillespie & Gillespie
53 W. Jackson Blvd., Suite 1062
Chicago, IL 60604
Tel. (312) 588-1281
Fax (312) 588-1284